[No. 20079. Department Two. January 6, 1927.]

SAMUEL F. RACINE, *doing business under the name of Samuel F. Racine & Company, Appellant,* v. G. D. BENDER *et al., Respondents.*[1]

[1] CONTRACTS (45, 46)—INJUNCTION (26)—VALIDITY OF CONTRACT—RESTRAINT OF TRADE OR COMPETITION. Where the business of a certified public accountant was such that his employees performed labor in acquiring intimate knowledge of and confidential relations with his clients, receipts for weekly salary given to an employee, reciting that, for a period of three years after leaving the employment, he would not solicit accounting or auditing work or perform accounting or auditing work with any of the clients with whom he had come in contact, constitutes a valid contract enforceable by injunction; the extent of the restrictions being, under the circumstances, reasonable (TOLMAN, C. J., dissenting in part).

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 28, 1926, upon granting a nonsuit, dismissing an action for an injunction. Reversed.

*George W. Williams* and *Philip D. McBride,* for appellant.

*Geo. W. Korte* and *J. Knox McDowall,* for respondents.

ASKREN, J.—The appellant, in 1909, opened offices in Seattle, where he has continuously since maintained a school of accounting as well as the business of a certified public accountant. In 1920, the respondent, who had previously thereto taken a course in appellant's accounting school, accepted employment with him as a certified public accountant at a salary of approximately one hundred fifty dollars per month. The employment lasted five years. During that time he became the

[1]Reported in 252 Pac. 115.

leader in his branch of the auditing work and his salary was increased to two hundred fifty dollars per month. At the time of employment, nothing was said between the parties as to any restrictions upon future employment which respondent might engage in, but at the end of each week during the employment he was required to prepare a report showing the clients of appellant for whom work was performed by respondent, as well as the number of hours. At the bottom of the report, and immediately above the signature of the respondent, appeared the following:

## "Warranty

"Recognizing the relationship which exists between an accountant and his client and as a consideration for my employment with Samuel F. Racine & Co., and also for the amount received therefor as compensation I hereby warrant that

"(a) During such employment, unless other arrangements are made, my entire time shall be devoted to the interests of Samuel F. Racine & Co.

"(b) During such employment I will not do any accounting, bookkeeping or auditing work for anyone except through the office of Samuel F. Racine & Co.

"(c) Either during or after leaving such employment I will not take any action whatsoever which may disturb existing business relations of Samuel F. Racine & Co. with any person, firm or corporation with whom I came in contact as a representative of Samuel F. Racine & Co., and

"(d) For a period of three years after leaving such employment I will not:

"(1) Solicit accounting or auditing work from any person, firm or corporation with whom I came in contact as a representative of Samuel F. Racine & Co., or

"(2) Perform any accounting or auditing work, either acting for myself or for any other party, for any person, firm or corporation with whom I came in contact during my employment with Samuel F. Racine & Co., also

"(3) That each of the above articles shall be construed to cover and include not only the clients of said Samuel F. Racine & Co. but also members of the staffs of his clients as well as occupants of their offices."

It will be noticed that the warranty recites an agreement for a "period of three years." The first reports contained a provision for only eighteen months, but this was changed to "three years" long prior to the cessation of employment by appellant. After the services of respondent were terminated, he opened a school of accountancy and offices as a certified public accountant, and sent out notices to this effect, some of which were sent to appellant's clients, and began to perform services for many of appellant's clients.

Appellant then brought this action, asking for an injunction against the respondent to prevent him from doing business with appellant's former clients, and to enforce the provisions of the contract with reference thereto. Upon the hearing, the evidence showed that the business of a certified public accountant is such that the person who actually performs the labor incident thereto acquires an intimate knowledge of the business of the client, preparing audits of the business, income tax returns, and other matters very confidential in their nature, and vital to the business itself. It showed also that appellant has spent some seventeen years in building up this business and that he employs a number of men to do the actual work at the clients' places of business; that, as work is to be done he sends an accountant to do the work, but as the client learns to know the accountant the desire of the client to have the particular accountant do his work increases to the point where it is almost impossible to change the accountant, owing to the confidential knowledge he has of all the important and vital matters concerning the business; that many times the appellant has no per-

sonal acquaintance with his clients, but they come to him because of his reputation and ability to have in his employ careful accountants, capable of doing the client's work and the accountant in most cases is the only point of contact between the appellant and the client.

The evidence disclosed that at least twenty-two of appellant's former clients changed to respondent when he commenced business for himself, and that substantial damage has resulted to appellant.

The trial court held that the warranty contained in the weekly report signed by respondent was not a part of the contract. Respondent testified that, while he read it many times, he did not consider it had anything to do with his employment, and that, at a luncheon when he was present, the appellant had described the provisions thereof as having no legal effect, and being placed there for the moral effect alone. The court thought that since the warranty was contained in the report for the week's work just finished, it referred to that week's work only, and was unenforceable since the services were already performed. It concluded that it could not be effectual as to the next week's work or any future services. This distinction is too shadowy to be upheld. It may be that, as to the first week's labor, the warranty could not be effective, but when each week respondent signed the warranty which expressly provides in the first three provisions in words that no man may misunderstand, "(a) my entire time shall be devoted; (b) during such employment I shall not do, and (c) either *during* or after leaving such employment I will not take any action," such a warranty contained in each report was certainly a basis and a part consideration for future employment. Counsel for respondent has cited a number of cases

involving mercantile transactions, where the courts have held that invoices accompanying delivery of goods pursuant to the previous contract, and containing modifications and qualifications thereof, are not binding upon the party purchasing, and are denominated by the courts as mere announcements *in terrorem.* Their application to the facts here where respondent signed each week for two hundred sixty weeks a warranty that he would not do certain things is not apparent. It is a part of the contract of employment and must be upheld, if it be not contrary to law. This brings us to the serious point in the case.

[1] It is respondent's contention that the contract is void because it is against public policy in that, (1) it unduly restricts respondent's liberty of contract, and (2) it unduly prevents the public from availing itself of his services. The provisions which are said to be unduly restrictive are sections 1, 2, and 3, of subdivision (d), as follows:

"(1) Solicit accounting or auditing work from any person, firm or corporation with whom I came in contact as a representative of Samuel F. Racine & Co., or

"(2) Perform any accounting or auditing work, either acting for myself or for any other party, for any person, firm or corporation with whom I came in contact during my employment with Samuel F. Racine & Co., also

"(3) That each of the above articles shall be construed to cover and include not only the clients of said Samuel F. Racine & Co., but also members of the staffs of his clients as well as occupants of their offices."

Roughly construed, these provisions prohibit respondent from soliciting or doing, within a period of three years, any work for any of those people whose desire for his services comes because through his work as a representative of the appellant he was enabled to acquire a knowledge of their business, or become inti-

mate with the members of the staff of such business. This construction appears to be recognized by both parties to the controversy. Construed in this manner, let us see to what extent the restrictions go. In the broadest sense, the restriction is nothing more than to prohibit respondent from taking appellant's clients with him when he severs his connection with appellant, or to perform services for those so intimately connected with such clients as to be fairly classified as his future clients. That such a requirement so accords with common honesty between men, and a failure to observe it leads to such direful results, is so well established that it seems strange that it should be contended that one engaged in a position where confidence is the basis of the relation between client and the employee and that confidence results through the employer and is the foundation stone of his business, then the employee may, disregarding his employer's rights, visit ruin upon him. The general rule applied in construing such contracts, is that restrictions therein are upheld, if they meet the test of showing that they are not greater than are reasonably necessary to protect the business or good will of the employer, even though they restrain the employee of his liberty to engage in a certain occupation or business, and deprive the public of the services, or restrain trade. 13 C. J. 475.

. 9 A. L. R. 1467, 1468, states the rule as follows:

"The validity of covenants by employees not to engage in a similar or competing business for a definite period of time, following the termination of the contract of employment in which the covenant is incorporated, may be sustained, although the contract is recognized to be in restraint of trade. The test generally applied in determining the validity of such a covenant is whether or not the restraint is necessary for the protection of the business or good will of the employer, and, if so, whether it imposes on the employee any

greater restraint than is reasonably necessary to secure to the business of the employer, or the good will thereof, such protection, regard being had to the injury which may result to the public, by restraining the breach of the covenant, in the loss of the service and skill of the employee, and the danger of his becoming a charge upon the public.

"It is clear that if the nature of the employment is such as will bring the employee in personal contact with the patrons or customers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers, enabling him, by engaging in a competing business in his own behalf, or for another, to take advantage of such knowledge of or acquaintance with the patrons or customers of his former employer, and thereby gain an unfair advantage, equity will interfere in behalf of the employer and restrain the breach of a negative covenant not to engage in such competing business, either for himself or for another providing the covenant does not offend against the rule that as to the time during which the restraint is imposed, or as to the territory it embraces, it shall be no greater than is reasonably necessary to secure the protection of the business or good will of the employer."

Of course, the rule above quoted is subject to the exception that the interests of the public may be so opposed to the contract that it should not be upheld, even though no good cause is shown between the parties. But no situation of this character is shown here. True, some of the former clients of appellant testified that they asked respondent to do their work, and that they desired his services, but this is not enough.

They do not desire his services because he is the only person who has the ability to perform them, but because they know him well and he knows all about

their business.  The case is no different than those contracts so often before the court where a physician's or dentist's assistant has contracted not to engage in the practice of the profession within reasonable limits of his employer's clientele.  No doubt the patients prefer the services of the assistant who has cared for their health in the past, but the law presumes that the service can well be performed by some one else.

Respondent has argued that this case is controlled by *Ice Delivery Co. v. Davis*, 137 Wash. 649, 243 Pac. 842, where the plaintiff, an ice company, sought to restrain the defendant from soliciting and serving ice to customers of the plaintiff, his knowledge of them being such having resulted from his former relationship with the plaintiff, and the injunction was denied.  But we are unable to so conclude.  The case at bar is more nearly like, and we think controlled by, the case of *Davis & Co. v. Miller*, 104 Wash. 444, 177 Pac. 323, where a former employee of the plaintiff, who had knowledge of all the important matters and stood in relation of confidence to the employer, started a like business of his own, and solicited the clients of his former employer.  In the *Ice Delivery* case, *supra*, it was sought to predicate the right to an injunction upon the decision in the *Davis* case.  But we rejected the plea of similarity and the distinction which should be made here was aptly made in that case, where we said:

"The facts and circumstances in that case and those in the present one are not parallel.  In that case, the services under consideration were more largely of a personal sort in the performance of duties of the agency.  The success of that service depended upon the personal ability of the agent to obtain as high rentals as possible and reasonable from tenants who were responsible and dependable.  For those purposes each piece of property handled was a separate and indi-

vidual thing. Davis & Co. had established a large and successful business of that kind, largely through the efforts of Miller within the knowledge of the clientele who were acquainted with him. The service was that of a representative between the owner and the tenant that necessitated the fixing of prices, terms of tenancy and knowledge of the financial standing of all the persons involved, with changes in that respect, if any, as they happened. Handling the business required daily conferences of all the employees and embraced confidences too important for others than John Davis who was the head of the concern, Miller and one other employee. Miller was always there, he was the one man in the confidence of Davis.

"Not so in the present case, which involved the sale of a commodity for consumption. Different from houses and rooms, a pound of ice is like another pound of ice, the same price to all in the same quantity. The customer may take it today and refuse it tomorrow. The substance of the service to the cutsomer is the ice delivered, not the personal service of the carrier who delivers it."

Respondent has cited a large number of cases from other jurisdictions. An examination of them discloses that they are not generally at variance with the rule we have announced. Their applicability depends upon the facts. In many of them will be found facts which the court concluded were insufficient to sustain the restrictions; as, for instance, in *Menter v. Brock,* 147 Minn. 407, 180 N. W. 553, where the court held that "there was no evidence that Brock in the position of manager came in contact with customers of plaintiff, so as to obtain any personal hold on the good will of the business;" in *Samuel Stores v. Abrams,* 94 Conn. 248, 108 Atl. 541, where the agreement related "merely to services in a local retail business and primarily aims to restrict competition"; and in *Mandeville v. Harman,* 42 N. J. Eq. 185, 7 Atl. 37, where a contract never to en-

gage in the practice of medicine in Newark was held not to be reasonably necessary for the protection of the plaintiff. We have been cited to no case which we deem parallel with this where the contract has been held void. Indeed, the restrictions in the covenant are far milder than most of those upheld by the court.

Much is said in the briefs as to the right to labor, and the necessity of the courts declining to uphold restrictive covenants, to much of which there can be no dissent. But the restriction here is not unreasonable either as to time—three years—or as to persons—Racine's clients. Nor is there any showing that it has affected or will affect respondent's labor for a livelihood. He testified that he had already secured a large number of clients and that at least three-fourths of them did not come to him from his former connections. The limitation, it will be seen, is far less restrictive than many usually upheld by the courts.

It is our conclusion that the contract is valid and should be upheld. The cause is reversed, with instructions to enforce the provisions thereof.

PARKER, MACKINTOSH, and BRIDGES, JJ., concur.

TOLMAN, C. J. (dissenting in part)—With most of what is said by the majority, treated abstractly, I agree; but I feel that the majority have overlooked what I consider the very unreasonable features of subdivision "2" of paragraph "d" of the so-called warranty. That subdivision is: "I will not: . . . Perform any accounting or auditing work, either acting for myself or for any other party, for any person, firm or corporation with whom I came in contact during my employment with Samuel F. Racine & Co., . . ." This is a peculiar provision and, I think, a very unreasonable one. Unless bound by a contract for a definite term—of which there is no suggestion

here—every one of Racine's clients might terminate the relationship at pleasure. I find no proof here which negatives the conclusion that each and all of Racine's former clients, now the clients of respondent, had not, without solicitation, at his own volition, terminated the relationship with Racine at or before the time respondent left Racine's employ. It may even be that some of them dissolved their relations with Racine years before Bender ceased to be so employed. Can anyone say that it is reasonably necessary, for the protection of Racine, that Bender should not for three years thereafter do any business for one who, though once a client of Racine's, had ceased to be such for good and sufficient reasons long years before Bender opened an office of his own? Clearly, when a client severed his relations with Racine, Racine had no interest to protect; and therefore, in my judgment, the order of the majority to enforce the provisions of the contract is too broad, and in reason and in justice should be so limited as to permit Bender to serve all those who had terminated their relations with Racine prior to the time when Bender ceased to be Racine's employe. I therefore, to that extent, dissent.