100 P.3d 791 (2004)
152 Wash.2d 828
Anthony A. LABRIOLA, Petitioner,
v.
POLLARD GROUP, INC., Respondent.
No. 74002-0.
Supreme Court of Washington, En Banc.
Argued March 9, 2004.
Decided November 10, 2004.
*792 A. Richard Maloney, Seattle, for Petitioner.
Eisenhower & Carlson, Stuart Morgan, Tacoma, for Respondent.
IRELAND, J.
In this case we consider whether there was consideration for the formation of a valid noncompete agreement signed by an employee, five years after he was hired, when the employer offered no other additional benefits or promises to the employee. Anthony Labriola (Employee) seeks a declaration that an agreement not to compete is null and void against Pollard Group, Inc. (Employer), his former Employer. A noncompete agreement entered into after employment has commenced is validly formed only when there is independent consideration at the time the agreement is reached. Finding that there was no independent consideration at the time of the 2002 noncompete agreement, we reverse the trial court's summary judgment ruling.

FACTS
In 1997, Employer hired Employee to work as a commercial print sales person, and the parties entered into an employment agreement. Under the agreement, Employer could terminate Employee without cause.[1] Employee's compensation consisted of a base salary and commission from sales. The agreement also contained a restrictive covenant not to compete in the custom printing business for a period of three years after employment ended. The agreement had no geographical limitations.[2]
Nearly five years later, in April 2002, Employer requested and Employee executed a "Noncompetition and Confidentiality Agreement" (noncompete agreement). The noncompete agreement required Employee to refrain from accepting employment with a competitor for a period of three years within 75 miles of Employer's business in Tacoma, Washington. Employee remained an "at-will" employee and received no additional benefits. Employer incurred no additional obligations from the noncompete agreement. The noncompete agreement also contained clauses for confidentiality, severability, and an award of attorneys fees and costs.
A few months later, in July 2002, Employer announced a new commission sales compensation schedule. The new schedule raised the threshold sales level required for commissions to be paid. The old schedule's threshold paid commission when an employee *793 generated sales of at least $25,000 for the month while the new schedule paid commission to an employee only after sales for the month exceeded $60,000. Employee determined that the new schedule would reduce his income by about 25% and sought employment for a similar position elsewhere. On November 12, 2002, Employer discovered Employee's intention to seek employment with a competitor and terminated Employee. Employer sent a letter to the competitor interested in hiring Employee, stating its intent to enforce Employee's noncompete agreement. The competitor did not hire Employee. Employee remains unemployed despite actively seeking a position similar to the one he had held with Employer.
Employee initiated suit against Employer, seeking a declaratory judgment that the noncompete agreement was null and void and that Employer tortiously interfered with Employee's business. Employee moved for partial summary judgment that the noncompete agreement was unenforceable. The trial court ruled against Employee and upheld the agreement. The trial court also denied Employee's motion that the trial court modify the 2002 noncompete agreement's time restriction from three years to six months. Employee voluntarily dismissed his tortious business interference claim following the trial court's decision on partial summary judgment. Employee sought direct review of this court which was granted.

STANDARD OF REVIEW
The issues before the court involve questions of law and the standard of review on appeal is de novo. Nationwide Mutual Fire Ins. Co. v. Watson, 120 Wash.2d 178, 195, 840 P.2d 851 (1992). When reviewing an order of summary judgment, the court engages in the same inquiry as the trial court. Marincovich v. Tarabochia, 114 Wash.2d 271, 274, 787 P.2d 562 (1990). A summary judgment motion can be granted only when no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Id. The court must consider the facts in the light most favorable to the nonmoving party, and the motion should be granted only if reasonable persons could reach only one conclusion. Id.

ANALYSIS

Issue 1. Is there consideration for the formation of a contract when an employee, already employed by the employer, executes a noncompete agreement but receives no new benefit and the employer incurs no further obligations?
Employee claims that the noncompete agreement fails for lack of consideration; in other words, a contract was not formed. Employer contends that the noncompete agreement is enforceable because future and continued employment and/or job training served as the Employer's consideration in exchange for Employee's execution of the noncompete agreement.
Courts enforce noncompete agreements that are validly formed and are reasonable. Racine v. Bender, 141 Wash. 606, 615, 252 P. 115 (1927). Consideration is "any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange." King v. Riveland, 125 Wash.2d 500, 505, 886 P.2d 160 (1994). Consideration is a bargained-for exchange of promises. Williams Fruit Co. v. Hanover Ins. Co., 3 Wash.App. 276, 281, 474 P.2d 577 (1970). The Restatement (Second) of Contracts states:
(1) To constitute consideration, a performance or a return promise must be bargained for.
(2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.
(3) The performance may consist of
(a) an act other than a promise, or
(b) a forbearance, or
(c) the creation, modification, or destruction of a legal relation.
RESTATEMENT (SECOND) OF CONTRACTS § 71(1)-(3) (1981).
Courts generally do not inquire into the adequacy of consideration and instead utilize a legal sufficiency test. Browning v. *794 Johnson, 70 Wash.2d 145, 147, 422 P.2d 314, 430 P.2d 591 (1967). Legal sufficiency "is concerned not with the comparative value but with that which will support a promise." Id.
The general rule in Washington is that consideration exists if the Employee enters into a noncompete agreement when he or she is first hired. Wood v. May, 73 Wash.2d 307, 310-11, 438 P.2d 587 (1968); Racine, 141 Wash. at 609, 252 P. 115; Knight, Vale & Gregory v. McDaniel, 37 Wash.App. 366, 368, 680 P.2d 448 (1984).
A noncompete agreement entered into after employment will be enforced if it is supported by independent consideration. Rosellini v. Banchero, 83 Wash.2d 268, 273, 517 P.2d 955 (1974); Schneller v. Hayes, 176 Wash. 115, 118, 28 P.2d 273 (1934). Independent, additional, consideration is required for the valid formation of a modification or subsequent agreement. There is no consideration when "one party is to perform some additional obligation while the other party is simply to perform that which he promised in the original contract." Banchero, 83 Wash.2d at 273, 517 P.2d 955 (citing 15 Walter H.E. Jaeger, Williston on Contracts § 1826 at 487 (3d ed.1972)). Independent consideration may include increased wages, a promotion, a bonus, a fixed term of employment, or perhaps access to protected information. Schneller, 176 Wash. at 118-19, 28 P.2d 273. Independent consideration involves new promises or obligations previously not required of the parties.
In Racine, the court concluded that a warranty not to compete signed by the Employee on a weekly basis for 260 consecutive weeks created a valid contract. Racine, 141 Wash. at 610, 252 P. 115. Racine employed Bender as a certified public accountant. At the time of hire, the parties made no mention of restrictions on Bender's future employment. However, at the end of each week during the employment, Bender was required to prepare a report and sign a warranty agreeing not to compete against Racine for three years after the conclusion of his employment. Id. at 607, 252 P. 115. We reasoned that
when each week [employee] signed the warranty which expressly provides in the first three provisions in words that no man may misunderstand, `(a) my entire time shall be devoted; (b) during such employment I shall not do[;] and (c) either during or after leaving such employment I will not take any action,' such a warranty contained in each report was certainly a basis and a part consideration for future employment.
Id. at 609, 252 P. 115. Although signed after the completion of one week's worth of work, the warranty not to compete signed by Bender served as consideration for future employment based upon the conduct of the parties each week for 260 weeks.
In Schneller, the court held a noncompete agreement that the employee signed just after starting work lacked consideration because the employer failed to advise Hayes, the employee, of a noncompete agreement at the time of the offer for hire. Schneller, 176 Wash. at 118, 28 P.2d 273. Hayes promised not to compete within one mile of the city of Walla Walla. The court reasoned there was no consideration since Hayes's noncompete agreement made no promises to the employee for future employment and stipulated nothing as to wages. The employer reduced Hayes's salary after only four months on the job. After seven months on the job, the employer announced he intended to reduce Hayes's salary again. A few weeks later the Employer terminated Hayes's employment and sought to enforce the noncompete agreement after Hayes set up a competing business in Walla Walla.
In the present case, Employer contends that continued employment served as consideration for the 2002 noncompete agreement. However, Racine and Schneller do not support Employer's contention. We found in Racine, the repeated signing of a warranty not to compete every week for 260 weeks served, operated as a promise in exchange for prospective employment and therefore was adequate consideration. In the present case, Employee signed only one subsequent noncompete agreement, nearly five years after beginning work for Employer. The conduct of Employer and Employee in this case does not support the conclusion *795 that continued employment served as consideration, as it did in Racine. Employee's situation is very similar to Schneller where we found consideration lacking. In Schneller, we concluded that consideration was absent in a noncompete agreement where the employer promised nothing in the way of future employment and nothing was stipulated as to wages. Schneller, 176 Wash. at 118-19, 28 P.2d 273. This is precisely the situation here. Employee's noncompete agreement made no promises as to future employment and wages. Further, during deposition, Robin Pollard, Employer's president, conceded that "no extra benefits or consideration or promises [were] made to [Employee] if he signed the noncompete."
Consideration is a bargained-for exchange of promises. A comparison of the status of the employer before and after the noncompete agreement confirms that the 2002 noncompete was entered into without consideration. Employer did not incur additional duties or obligations from the noncompete agreement. Prior to execution of the 2002 noncompete agreement, Employee was an "at will" Employee. After Employee executed the noncompete agreement, he still remained an "at will" employee terminable at Employer's pleasure. We hold that continued employment in this case did not serve as consideration by Employer in exchange for Employee's promise not to compete.
Employer also argues that the training the Employee received after signing the noncompete served as consideration for Employee's execution of the noncompete agreement. Employer relies on Schneller and Wood in arguing that instruction served as consideration for Employee's promise to not compete. The noncompete agreement makes no mention that Employer's instruction served as consideration in exchange for Employee's promise not to complete. This is so because Employer did not intend to provide Employee with any additional benefits or promises from the company. While Employer alleges that Employee received training after signing the noncompete agreement, the Employer has not demonstrated that the training received after signing the noncompete agreement was any different from what he was entitled to under the 1997 employment agreement. The Employer's president, Robin Pollard, conceded that there were no new benefits or promises made to Employee in exchange for the Employee's promise not to compete.
Schneller and Wood support the conclusion, that in the present case, Employer did not promise instruction as consideration for Employee's promise not to compete. In Schneller, we stated that the facts of the case did not support a finding of consideration by way of instruction because the Employee was a licensed optician and did not undergo employment as an apprentice. Schneller, 176 Wash. at 120-21, 28 P.2d 273. The Employee was experiencedprior to working for Schneller he worked with an optical company. In contrast, in Wood, we determined that the apprentice received an extensive amount of training after he signed a noncompete agreement and that training was consideration in exchange for signing the noncompete agreement. Wood, 73 Wash.2d at 308, 311, 438 P.2d 587. Unlike Wood and more similar to Schneller, here the Employee was experienced when he signed the noncompete agreement. Employee's previous job before joining Employer was very similar to his job with Employer. Employee had already received training in the five years he worked for Employer before he executed the agreement. Employer's president made it quite clear that no promises were made to Employee in exchange for signing the noncompete agreement. This would include the promise to train or instruct the Employee.
Further, Employer relies on a decision by Division Two of the Court of Appeals, Knight, 37 Wash.App. 366, 680 P.2d 448. The Court of Appeals enforced a noncompete agreement that was executed after the employees were hired but before the Employees started working because they knowingly signed the noncompete agreement on the first day of work. Id. at 368-69, 680 P.2d 448. Employer claims that in Perry v. Moran, 109 Wash.2d 691, 699-700, 748 P.2d 224 (1987), judgment modified on recon., 111 Wash.2d 885, 766 P.2d 1096 (1989), this court explicitly approved the Knight analysis that "[c]ontinued employment and training are *796 sufficient consideration for an employee's promise not to compete." Knight, 37 Wash.App. at 368-69, 680 P.2d 448. Employer's assertion is mistaken. In Perry, we utilized Racine and Knight to determine whether a validly formed noncompete agreement was reasonable. Perry, 109 Wash.2d at 700, 748 P.2d 224.
Unlike Knight, the Employee here did not sign the noncompete agreement before the very first day of work. He was already employed for five years and received no additional benefits than what he was entitled to under the 1997 employment agreement. Employer simply promised to perform what he promised Employee in the original 1997 employment agreement in exchange for Employee taking on the additional promise to not compete against the Employer for three years within a 75 mile radius of Tacoma.
Employer argues that continued employment and/or continued training has served as sufficient consideration for the formation of a binding noncompete agreement in Washington for over 70 years and that a decision by the court to reverse the trial court changes longstanding law. Our decision today, contrary to Employer's contention, follows this court's jurisprudence that independent consideration is required at the time promises are made for a noncompete agreement when employment has already commenced. Rosellini, 83 Wash.2d at 273, 517 P.2d 955; Schneller, 176 Wash. at 119, 28 P.2d 273. While continued employment and/or continued training may serve as sufficient consideration, it certainly was not the case here. Racine, 141 Wash. at 614, 252 P. 115; and Wood, 73 Wash.2d at 310-11, 438 P.2d 587. Accordingly, we hold that the noncompete agreement is not supported by consideration and is not enforceable.

Issue 2. Other issues concerning the 1997 employment agreement, attorney's fees and costs, affirmative defenses and counter claims, and CR 11 sanctions.

a. 1997 employment agreement
At oral argument, Employee conceded paragraph 10 of the 1997 agreement is enforceable. Given that stipulation, we need not reach that issue.

b. Attorneys fees
Employee and Employer both request that the prevailing party be awarded attorneys fees and costs in this matter. In Washington, attorney fees may be awarded only when authorized by a private agreement, a statute, or a recognized ground of equity. Fisher Properties, Inc., v. Arden-Mayfair, Inc., 106 Wash.2d 826, 849-50, 726 P.2d 8 (1986). RCW 4.84.330 states that where a contract provision allows for the awarding of attorneys fees and costs to one of the parties, "the prevailing party, whether he is the party specified in the contract [] or not, shall be entitled to reasonable attorneys fees in addition to costs and necessary disbursements." Id. Attorneys fees and costs are awarded to the prevailing party even when the contract containing the attorneys fee provision is invalidated. See Mt. Hood Beverage Co. v. Constellation Brands, Inc., 149 Wash.2d 98, 121-122, 63 P.3d 779 (2003); Herzog Aluminum, Inc. v. Gen. Am. Window Corp., 39 Wash.App. 188, 196-97, 692 P.2d 867 (1984); Yuan v. Chow, 96 Wash. App. 909, 915-18, 982 P.2d 647 (1999); and Stryken v. Panell, 66 Wash.App. 566, 572-73, 832 P.2d 890 (1992).
Paragraph 12 of the noncompete agreement contains a provision for an award of attorneys fees and costs for the Employer. Employee, the prevailing party, is entitled to an award of attorney fees under RCW 4.84.330, regardless of whether the contract is invalidated in whole or in part. Mt. Hood Beverage Co., 149 Wash.2d at 121-22, 63 P.3d 779. As the prevailing party, we award Employee attorneys fees and costs.

c. Affirmative defenses and counterclaims
The trial court issued an order granting Employer's partial motion for summary judgment that the noncompete agreement was enforceable. But the trial court also granted Employee's motion, dismissing Employer's two affirmative defenses and five counterclaims. Employer urges the court to reinstate its affirmative defenses and counterclaims, in the event that we decide that the noncompete agreement is unenforceable. *797 The two affirmative defenses dismissed were failure to mitigate damages and fault of a nonparty.
The doctrine of avoidable consequences, or mitigation of damages, prevents an injured party from recovering damages that could have been avoided through reasonable efforts. We have previously held the following text applicable:
[a] wide latitude of discretion must be allowed to the person who by another's wrong has been forced into a predicament where he is faced with a probability of injury or loss. Only the conduct of a reasonable man is required of him. If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen.
Hogland v. Klein, 49 Wash.2d 216, 221, 298 P.2d 1099 (1956) (emphasis omitted) (quoting Charles T. McCormick, Handbook on the Law of Damages 35, at 134 (1935)). See also Cobb v. Snohomish County, 86 Wash.App. 223, 230, 935 P.2d 1384 (1997).
Here, there is no factual dispute. Posttermination, the Employee sought a position similar to the one he held with Employer. During his deposition, Employee stated that he applied for a sales position with companies such as Johnson & Johnson, Solva Pharmaceuticals, Floud USA, Hubert Research, and the Tacoma News Tribune. Employee also sought help from employment recruiters as well. Despite these efforts, Employee remained unemployed. Employer argues that Employee failed to mitigate damages because he did not seek part-time employment or seasonal employment or any other employment outside the 75 mile radius restriction in the noncompete agreement. The doctrine of avoidable consequences only requires the Employee to act reasonably to mitigate his damages. Employee's job strategy to search for a similar position was reasonable. We hold that the trial court did not err when it dismissed Employer's failure to mitigate defense.
Employer's second affirmative defense claims fault of a nonparty. This was a defense to Employee's tortious business interference claim against Employer. However, Employee voluntarily dismissed his tortious business interference claim following the trial court's decision on partial summary judgment. Employee has not sought to reinstate the tortious business interference claim. We affirm the trial court's decision to dismiss Employer's second affirmative defense.
The trial court dismissed Employer's five counterclaims: breach of contract, injunctive relief, breach of the duty of loyalty, breach of the Uniform Trade Secrets Act,[3] and conversion.
The first counter claim, Employer alleges that Employee's actions in soliciting employment with the Employer's competitors and disclosing and/or threatening to disclose Employer's confidential information constitute a breach of contract. Second, Employer seeks injunctive relief compelling the Employee to return any and all of Employer's proprietary information that the Employee has in his control and to enforce the noncompete agreement for three years within a 75 mile radius of Tacoma. Third, Employer alleges that Employee breached his duty of loyalty by attempting to solicit Employer's customers and Employees to end their business or employment relationship with the Employer. Fourth, Employer alleged that Employee disclosed trade secrets under chapter 19.108 RCW, the Uniform Trade Secrets Act. Fifth, Employer alleges that Employee wrongfully converted Employer's property for his own use.
On summary judgment, the Employer did not bring forth sufficient facts to substantiate the counterclaims. Without a prima facie showing, Employer cannot avoid a summary judgment ruling against it on the five counterclaims. We hold that the trial court did not err when it dismissed Employer's five counterclaims on the 2002 noncompete agreement.

d. Civil Rule 11
Employee argues that we should order the trial court to conduct a hearing against Employer *798 for violating CR 11.[4] CR 11 provides the court with the discretionary authority to impose sanctions upon a motion by a party or on the superior court's own initiative. No motion having been made to the trial court, Employee's request is premature. We decline Employee's request.

CONCLUSION
We hold that the 2002 noncompete agreement lacked independent consideration and is not enforceable against the Employee. We do not reach the issue of whether the 1997 agreement is enforceable because the Employee conceded that it is enforceable. We award the prevailing party, Employee, attorney fees and costs. We affirm the trial court's dismissal of Employer's affirmative defenses and counterclaims. We decline the Employer's CR 11 request. Accordingly, we reverse the trial court's summary judgment ruling against Employee. We enter summary judgment in favor of Employee that the 2002 noncompete agreement was not validly formed.
ALEXANDER, C.J., JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS and FAIRHURST, JJ., concur.
MADSEN, J. (concurring).
The majority reaches the correct result but fails to sufficiently articulate the multiple legal grounds raised for striking down a facially unreasonable noncompete agreement formed during the course of at-will employment, leaving doubt as to the permissible scope of a valid noncompete agreement. First, the majority's position on the adequacy of continued employment as consideration is unclear. Continued at-will employment is never independently sufficient to uphold a covenant not to compete, and we should not suggest otherwise. Second, the unreasonable nature of the noncompete agreement in question is overlooked as an independent basis for finding the agreement unenforceable. Therefore, I write separately to clarify that continued at-will employment is never sufficient consideration for a noncompete agreement formed after the outset of employment and to explain that the agreement in question is also unenforceable on the independent ground that it is unreasonable.[1]

ANALYSIS
Continued at-will employment, without more, is never sufficient consideration for a noncompete agreement formed subsequent to employment. As the majority correctly states, where the only consideration is continued employment, "[t]he general rule in Washington is that consideration exists [only] if the [e]mployee enters into a noncompete agreement when he or she is first hired." Majority at 794. This proposition is well-settled and without exception. See, e.g., Wood v. May, 73 Wash.2d 307, 312, 438 P.2d 587 (1968); Racine v. Bender, 141 Wash. 606, 612, 252 P. 115 (1927); Knight, Vale & Gregory v. McDaniel, 37 Wash.App. 366, 369, 680 P.2d 448 (1984); see also 2 Corbin on Contracts § 6.19, at 338 (1995); 15 Corbin on Contracts § 80.23, at 169 (2003). As such, the majority properly holds that Labriola's continued employment was insufficient to uphold a noncompete agreement formed long after he was hired. Majority at 796.
While correctly establishing that "independent consideration is required at the time promises are made ... [to validate] a noncompete agreement [formed] when employment has already commenced," the majority then sends a confusing message with regard to the potential adequacy of continued employment and training as independent forms of consideration, by adding that "[w]hile continued employment and/or continued training may serve as sufficient consideration, it certainly was not the case here." Majority at 796 (emphasis added).
Established case law does not support the majority's incautious suggestion that continued employment or routine training may serve as independently sufficient consideration in some cases where a noncompete *799 agreement is formed after employment begins. At-will employment is by definition non-binding, as either party may terminate the relationship at any time.[2] As such, continued at-will employment cannot sustain a covenant not to compete without supplemental consideration such as explicitly promised or substantially realized future employment or specialized training, increased wages, or the disclosure of confidential information of value. Wood, Racine, and Knight accordingly recognize that while offers of at-will employment may serve as consideration for noncompete agreements formed at the inception of employment, promises of employment, or training are otherwise sufficient only where they are explicit and convey something more than that which was bargained for or inherent in the original terms of employment.
In accord with these principles, an employer's explicit promise "to teach [an employee] the [new] skill of horseshoeing" was held sufficient to support a noncompete agreement in Wood, 73 Wash.2d at 310, 438 P.2d 587, as were explicit promises of "future employment" for specific terms in Racine, 141 Wash. at 609, 252 P. 115. Relying on our decisions in Wood and Racine, the Court of Appeals subsequently reasoned in Knight that "[c]ontinued employment and training [together] are sufficient consideration for an employee's promise not to compete." Knight, 37 Wash.App. at 368-69, 680 P.2d 448 (emphasis added) (citing Wood, 73 Wash.2d at 310-11, 438 P.2d 587; Racine, 141 Wash. at 606, 252 P. 115). While the Court of Appeals' reliance on our decision in Wood was sound with regard to training, Racine did not, as Knight suggests, address "continued employment," but rather the analytically distinct category of guaranteed "future employment."[3] Thus, none of the cases from this court that are cited by the majority recognize continued employment as sufficient consideration for noncompete agreements entered into after employment has commenced.
Moreover, in Schneller v. Hayes, 176 Wash. 115, 119-21, 28 P.2d 273 (1934) this court held that a promise of employment which could be terminated at the employer's pleasure was not adequate consideration for an employee's promise not to compete, even though the employee received instruction and work-related experience during the routine course of his employment. The agreement in Schneller, like the agreement at issue here, was "wholly lacking in consideration" because it "promised [the employee] nothing in the way of future employment, and [moreover] stipulated nothing as to wages." Schneller, 176 Wash. at 118-19, 28 P.2d 273. In sum, this court has never held that continued employment alone is sufficient consideration to uphold a noncompete agreement, and we should be careful not to suggest otherwise.
While largely overlooked in the majority's analysis, a covenant not to compete is also unenforceable if unreasonable. Sheppard v. Blackstock Lumber Co., 85 Wash.2d 929, 931, 540 P.2d 1373 (1975); Racine, 141 Wash. at 611, 252 P. 115, Wood, 73 Wash.2d 307, 438 P.2d 587, Knight, 37 Wash.App. at 369, 680 P.2d 448. Recognizing this fact, the majority acknowledges that only "noncompete agreements that are validly formed and are reasonable" will be enforced. Majority at 793 (emphasis added). The majority's focus on the absence of consideration should therefore not be interpreted to suggest that the agreement at issue here would be made enforceable merely by the addition of consideration in the form of "increased wages, a promotion, a bonus, a fixed term of employment, or perhaps access to protected information." Majority at 794. A restrictive covenant that is unreasonable is unenforceable even where the requirements of consideration are met.
Whether a noncompete agreement is reasonable is a matter of law to be decided by the courts. Knight, 37 Wash.App. at 368, *800 680 P.2d 448; Marquez v. Univ. of Washington, 32 Wash.App. 302, 648 P.2d 94 (1982); Alexander & Alexander, Inc. v. Wohlman, 19 Wash.App. 670, 578 P.2d 530 (1978). Agreements cannot be more restrictive than is reasonably necessary to protect the legitimate business interests of employers. Racine, 141 Wash. at 612, 252 P. 115; Wood, 73 Wash.2d at 312, 438 P.2d 587; Sheppard, 85 Wash.2d at 931-33, 540 P.2d 1373; Knight, 37 Wash.App. at 369, 680 P.2d 448. The test for reasonableness takes into account "whether or not the restraint is necessary for the protection of the business or good will of the employer," and "whether it imposes on the employee any greater restraint than is reasonably necessary to secure to the business of the employer, or the good will thereof, such protection." Racine, 141 Wash. at 611-12, 252 P. 115; see also Wood, 73 Wash.2d at 309, 438 P.2d 587.
In short, employers can take measures to protect legitimate business interests, but may not unreasonably restrict the freedom of current or former employees to earn a living.[4] Noncompete agreements are therefore unreasonable whenever they are used to secure employers against employees lawful use of labor and skills.[5]Alexander, 19 Wash.App. at 687, 578 P.2d 530; Copier Specialists, Inc. v. Gillen, 76 Wash.App. 771, 774, 887 P.2d 919 (1995). Noncompete agreements designed to stabilize a companys current workforce through unreasonable restraints are similarly unenforceable.[6]
The agreement at issue here is unreasonable because it bars Labriola from working in his field of expertise even where he takes no unfair advantage of his former employer. The agreement specifically prohibits Labriola both "during and after termination of [e]mployment" from "perform[ing] any work in competition with the services, sales and products of Employer" or "[b]ecom[ing] employed by any business competing with Employer." Ex. C, Clerk's Papers at 131-34. By prohibiting Labriola from gaining lawful post-termination employment in such broad-sweeping terms, the agreement represents an unfair attempt to stabilize Pollard's workforce and secure its business against legitimate competition. Postemployment restraints of this nature are never reasonable. Ekman v. United Film Service, Inc., 53 Wash.2d 652, 657, 335 P.2d 813 (1959).[7] Because the noncompete agreement at issue is much more restrictive than reasonably necessary to protect legitimate business interests, the agreement would be unenforceable even if the requirements of consideration were met.
NOTES
[1] The employment agreement required an employee receive at least 10 days' notice prior to the effective date of termination.
[2] Restrictive Covenant provision:

For a period of three years after the termination of this Agreement for any reason, the Employee shall not contract, in any manner, for any reason, for or on behalf of any person or entity engaged, or intending to engage in, a custom printing business, any customer, or prospective customer of the Employer whose name is contained on any customer list which is part of the confidential information described above.
Clerk's Papers (CP) at 12.
[3] ch. 19.108 RCW.
[4] Employee filed a motion to supplement the record concerning the CR 11 issue. Since we decline to reach that issue, we deny the Employee's motion to supplement the record.
[1] Appellant argued the issue of reasonableness in Parts VI.A.7 and VI.C of the brief.
[2] Ford v. Trendwest Resorts, Inc., 146 Wash.2d 146, 152, 43 P.3d 1223 (2002); Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 223, 685 P.2d 1081 (1984); Roberts v. Atl. Richfield Co., 88 Wash.2d 887, 891, 568 P.2d 764 (1977); Webster v. Schauble, 65 Wash.2d 849, 852, 400 P.2d 292 (1965).
[3] While Knight suggests that three years of continued employment may be sufficient, our decision today does not establish what a reasonable or substantial length of time is, only that continued employment was not sufficient consideration here. Majority at 796.
[4] The Restatement provides: "In the case of a post-employment restraint, the harm caused to the employee may be excessive if the restraint inhibits his personal freedom by preventing him from earning his livelihood if he quits." Restatement (Second) of Contracts § 188, at 43 cmt. c (1981). See also 2 E. Allan Farnsworth, Farnsworth on Contracts § 5.3, at 29 (3d ed.2004).
[5] The Restatement supports Washington law on this point: An employer cannot "prevent or inhibit" its former employees from using the "normal skills of their trade." Restatement (Second) of Contracts § 188, cmt. (b) (1981).
[6] See Schmersahl, Treloar & Co., P.C. v. McHugh, 28 S.W.3d 345, 350 (Mo.Ct.App.2000) (holding, in part, that a noncompete agreement constituted an unenforceable restrictive covenant in restraint of trade, since it did not seek to protect proprietary information or customer contacts but, rather, the stability of plaintiff's workforce).
[7] The Georgia court has observed, for example, that "[t]his court has held on several occasions that a covenant wherein the employee agreed not to accept employment with a competitor `in any capacity' imposes a greater limitation upon the employee than is necessary for the protection of the employer and therefore is unenforceable." Howard Schultz & Associates of the SE, Inc. v. Broniec 239 Ga. 181, 184, 236 S.E.2d 265, 268 (1977) (citing Dunn v. Frank Miller Assocs., 237 Ga. 266, 227 S.E.2d 243 (1976); Federated Mutual Ins. Co. v. Whitaker, 232 Ga. 811, 209 S.E.2d 161 (1974); Dixie Bearings, Inc. v. Walker, 219 Ga. 353, 133 S.E.2d 338 (1963)). Corbin says: "[P]ublic policy prevents the enforcement of a restraint that is unconnected with a contract that has a purpose other than restraining trade." 2 Corbin on Contracts, § 6.19, at 340 (1995).