FILED
COURT OF APPEALS
DIVISION II

2013 DEC 17 AM 8: 48

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WILL MCKASSON, | No. 43486-5-II |
| Appellant, | |
| v. | |
| BRIAN JOHNSON and DANIELLE JOHNSON, husband and wife; and ACADEMY OF BRIAN JOHNSON, LLC, a Washington limited liability company, | PUBLISHED OPINION |
| Respondents. | |

HUNT, J. — Will McKasson appeals the superior court's denial of summary judgment on

the issue of enforceability of a noncompete clause in his employment contract with the Academy

of Brian Johnson, LLC (the Academy) which he sued for damages and a temporary restraining

order to prohibit enforcement of the noncompete clause. McKasson argues that the noncompete

clause is unenforceable as a matter of law because the employment contract states that the

Academy gave him no consideration for this new employment restriction other than continuing

his at-will employment. The Academy responds that it gave McKasson additional consideration

in exchange for this noncompete restriction, which created a material issue of fact precluding

summary judgment. We agree with McKasson, hold that the noncompete clause is

unenforceable as a matter of law, and reverse and remand for entry of summary judgment in

favor of McKasson on the issue of enforceability of the noncompete clause.

## FACTS

### I. EMPLOYMENT CONTRACT

Brian and Danielle Johnson own the Academy of Brian Johnson, LLC, a fitness business with approximately 400 members. The Academy provides group classes, individual instruction, and on-site equipment for self-directed exercise in its facility.

Will McKasson worked for the Academy without a contract as an at-will employee from 2004 to 2009. At some future point, Brian[1] wanted to transfer the Academy's ownership to McKasson; these two agreed on a transfer plan, which included, among other things, Brian's desire to formalize McKasson's employment in a written contract. In 2009, the Academy and McKasson signed a written employment contract, drafted and presented by the Academy. This employment contract, however, did not mention any such plan to transfer ownership of the business to McKasson; nor did it provide any change in McKasson's employment other than adding a noncompete restriction.

This employment contract provided that McKasson would remain an at-will employee at his previous hourly wage of $16. The contract also included a noncompete clause, stating that after termination of his employment, McKasson could not work for any business in competition with the Academy for three years. The contract stated explicitly that the Academy did not give McKasson any consideration for this employment restriction, other than continuing his at-will

---

[1] For clarity, we refer to Brian and Danielle Johnson by their first names. We intend no disrespect.

2

employment.[2] The contract also contained an integration clause, which provided:

> [T]his instrument contains the entire agreement between the parties. *No amendment or variations of the terms and conditions of this Agreement shall be valid unless it is in writing and signed by all parties hereto.* Any prior agreements between the parties are revoked in their entirety by this Agreement.

Clerks Papers (CP) at 15 (emphasis added).

Brian never transferred the Academy to McKasson. Instead, the Academy fired McKasson in 2011, alleging that he had engaged in a sexual relationship with a customer. Thereafter, the Academy's attorney informed McKasson's new prospective employer about McKasson's noncompete restriction and alleged misconduct.

The parties disputed whether McKasson received additional employment benefits as consideration for the noncompete restriction. Brian asserted that before signing the contract the two agreed that McKasson would take on a management role, that the Academy would allow McKasson to teach private lessons and "open" classes in the Academy's facility, and that McKasson would be permitted to sell exercise equipment inside the facility. CP at 26. Brian further claimed that if McKasson had not agreed to the noncompete restriction, he (Brian) would not have allowed McKasson to conduct these additional business activities and to keep the revenue they generated. Brian implied that he had also sought the noncompete restriction

---

[2] Specifically, the contract provided:

> The consideration for Employee's agreement under this Section 2 is the execution of this Agreement by Employer and Employer's agreement hereunder to employ Employee. No additional consideration for Employee's post-termination competition agreement hereunder is intended by the parties and the parties hereby acknowledge the adequacy and sufficiency of said consideration.

CP at 13.

because McKasson would receive valuable knowledge during his employment.[3] McKasson, however, asserted that he received no pay raise, no promotion, and no improvement in his employment after he signed the contract.

## II. PROCEDURE

McKasson sued the Johnsons and the Academy for damages; he also sought a temporary restraining order prohibiting them from enforcing the noncompete clause. He moved for partial summary judgment, asking the superior court to rule that the noncompete restriction was unenforceable as a matter of law. The superior court denied his motion, ruling that enforceability of the noncompete restriction remained a factual issue that precluded resolution as a matter of law. The superior court also denied McKasson's motion to reconsider.

McKasson sought discretionary review, in connection with which the parties stipulated that (1) the superior court's orders involve a controlling question of law, about which there is substantial ground for a difference of opinion; and (2) immediate review would materially advance the ultimate termination of the litigation. Our commissioner granted discretionary review.

## ANALYSIS

McKasson argues that the noncompete clause in his employment contract with the Academy is unenforceable as a matter of law because (1) Washington case law holds that continuing employment is not consideration for a noncompete restriction after employment has begun; (2) the employment contract explicitly stated that the Academy did not give McKasson

---

[3] More specifically, Brian asserted, "Knowing the integral value of the techniques and business practices we use, Will and I agreed that he should sign an Employment Agreement that included a non-compete provision." CP at 26.

any consideration for the noncompete restriction other than continuing employment; (3) the contract also contained an integration clause, which invalidated any agreement made before execution of the contract as well as any amendment to the contract not in writing and signed by both parties; and (4) therefore, the Academy's evidence of other oral agreements or amendments to the contract was not admissible under the parol evidence rule to contradict the written contract's terms, and the Academy could not prove it had provided independent consideration for the noncompete restriction to create an enforceable noncompete clause.

The Academy primarily argues in response that (1) the parties' intent to create a partially integrated contract remains an issue of fact, precluding summary judgment on the issue of enforceability of the noncompete restriction; (2) its additional consideration for the noncompete restriction was not incorporated in the written agreement; and (3) the contract's language was deficient. These arguments do not defeat McKasson's entitlement to summary judgment. We hold that the noncompete restriction was unenforceable as a matter of law for lack of consideration and reverse on that basis; thus, we do not address the other arguments.

I. CONTINUING EMPLOYMENT NOT SUFFICIENT CONSIDERATION FOR NONCOMPETE CLAUSE

Courts will enforce a noncompete clause if the restriction is reasonable and the clause was validly incorporated into an employment agreement. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 833, 100 P.3d 791 (2004). Valid incorporation of a noncompete clause requires the employer to give the employee consideration in exchange for the employee's employment restriction; consideration in this context is an employer's promise to do something for the employee or to give the employee an additional benefit in exchange for the employee's agreement to the restriction. *See* RESTATEMENT (SECOND) OF CONTRACTS § 71(1)-(3) (1981).

Whether employment alone constitutes sufficient consideration for an employee's noncompete restriction depends on *when* the employer and employee agree to it. If a prospective employee agrees to a noncompete restriction when he or she is first hired, employment by itself may be sufficient consideration. *Labriola*, 152 Wn.2d at 834. But when an existing at-will employee agrees to a noncompete restriction some time *after* he or she was hired, the restriction is enforceable only if the employer gives the employee *independent consideration* at the time of their agreement. *Id.* Such independent consideration in exchange for the employee's new employment restriction requires the employer to undertake an obligation or promise, other than continuing employment, that it was not previously required to undertake.[4] *Id.* Examples of independent consideration for a noncompete restriction include increased wages, a promotion, a bonus, or access to protected information. *Id.*

The noncompete clause at issue here expressly stated that the Academy did not give McKasson any consideration other than continuing at-will employment in exchange for his noncompete restriction. The Academy concedes that the employment contract does not provide independent consideration for the noncompete restriction and that continued at-will employment is not sufficient to create an enforceable restriction.

## II. NONCOMPETE CLAUSE UNENFORCEABLE AS A MATTER OF LAW

Nevertheless, the Academy argues that it did give McKasson additional consideration for the noncompete clause (e.g., additional business opportunities) in separate oral agreements not

---

[4] Conversely, mere continuing employment, without any new promise or benefit by the employer, is not sufficient consideration when an existing employee agrees to a noncompete restriction. *See Labriola*, 152 Wn.2d. at 836 (employer did not provide independent consideration where employer's duties to employee did not change after agreement; instead, remained same as before).

included in the written employment contract. The plain language of the written contract's integration clause, however, expressly states that (1) the contract "contains the entire agreement between the parties"; (2) no variations in its terms are valid if not in writing and signed by the parties; and (3) any prior agreements between the parties are revoked. CP at 15. But the Academy asserts that the contract's inclusion of this integration clause was a mistake and, therefore, we should ignore it in favor of contrary separate oral agreements, which it further argues create issues of material fact that defeat summary judgment.

The Academy's argument lacks merit. First, the plain language of the written contract's integration clause expressly precluded the enforceability of the Academy's alleged oral agreement providing consideration for the noncompete restriction.[5] Second, we do not entertain the Academy's proffered excuse that it included the integration clause in the written contract by mistake because we construe written contracts against their drafters such that they cannot later benefit from "mistakes" that they were in a position to prevent. *See Pierce County v. State*, 144 Wn. App. 783, 813, 185 P.3d 594 (2008) (ambiguous contracts are generally construed against the drafter); *Emter v. Columbia Health Servs.*, 63 Wn. App. 378, 384, 819 P.2d 390 (1991) (drafter cannot take advantage of ambiguities it could have prevented with greater diligence); *Cont'l Ins. Co. v. PACCAR, Inc.*, 96 Wn.2d 160, 167, 634 P.2d 291 (1981) (party who created

---

[5] When a contract's term is plain and unambiguous, we interpret the term's meaning and, thus, the parties' intentions, according to its plain language. *Cornish Coll. of the Arts v. 1000 Va. Ltd. P'ship*, 158 Wn. App. 203, 231, 242 P.3d 1 (2010), *review denied*, 171 Wn.2d 1014 (2011).

7

the contract is in better position to prevent ambiguous language or mistakes).[6] Based on the record here, it is undisputed that the Academy drafted the employment contract and presented it to McKasson to sign; the Academy cannot now escape the contract's clear provisions by claiming ambiguity in its favor. Thus, the Academy cannot present unenforceable separate oral agreements to create issues of material fact in the summary judgment context.

There are no issues of material fact that prevent summary judgment to McKasson on the enforceability of the noncompete clause in his employment contract with the Academy. Looking to the fully integrated written employment contract, we hold, as a matter of law, that the noncompete restriction is legally unenforceable[7] and that, therefore, the superior court should have granted, rather than denied, McKasson's motion for partial summary judgment. Accordingly, we reverse the superior court's denial of McKasson's motion for summary

---

[6] See also the Restatement, which echoes these rationales: The party who drafts the contract (1) is more likely to protect his or her own interests over the other party's interests; and (2) may intentionally leave a term ambiguous, hoping to decide at a later date what meaning the term should hold. RESTATEMENT (SECOND) OF CONTRACTS, § 206(a) (1981).

[7] The superior court acknowledged that the noncompete clause was unenforceable. But it nevertheless denied summary judgment to McKasson because it viewed the Academy's representation of additional business opportunities for McKasson as creating a material issue of fact, distinguishing this case from *Labriola*.

No. 43486-5-II

judgment and remand for entry of summary judgment on his behalf on the issue of enforceability

of the noncompete clause.

Hunt, J.

We concur:

Worswick, C.J.

Johanson, J.