612 F.2d 405
 ECONOMICS LABORATORY, INC., a Delaware Corporation,
Plaintiff-Appellant,
v.
Joseph DONNOLO, Jr., Paul N. Griffith, Jr., Thomas M.
Kennedy and Total Chemical Company, a Nevada
Corporation, Defendants-Appellees.
 No. 77-2013.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 2, 1979.
 
 1
 Stephen L. Morris, Lionel, Sawyer & Collins, Las Vegas, Nev., for plaintiff-appellant.
 
 
 2
 David Goldwater, Wiener, Goldwater & Waldman, Las Vegas, Nev., for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the District of Nevada.
 
 
 4
 Before HUFSTEDLER and TRASK, Circuit Judges, and WYATT,* District Judge.
 
 
 5
 WYATT, District Judge.
 
 
 6
 This is an appeal by plaintiff Economics Laboratory, Inc. ("Economics") from two judgments of the United States District Court for the District of Nevada in an action against Donnolo, Griffith and Kennedy ("the individual defendants"), and Total Chemical Co. ("Total"). We affirm the judgments in all respects.
 
 
 7
 Economics manufactures detergents which it sells nationally to restaurants and other institutions. The individual defendants, who worked for Economics as sales supervisors, were discharged on August 15, 1975, for having in April, 1975, organized Total to compete with Economics in the Las Vegas area. At the time of their discharges, Griffith was district manager for the Las Vegas area, Kennedy was district manager for the Phoenix area, and Donnolo was regional manager of the Pacific Southwest Region, which included the territories of both of his co-defendants.
 
 
 8
 Economics commenced this action in the District Court on May 9, 1976, seeking: (a) money damages for breach by each individual defendant of the three restrictive covenants in the individual defendants' employment agreements with Economics; (b) money damages for fraudulent conversion by the defendants in having collected from Economics on false expense reimbursement requests and in having taken away property belonging to Economics when they left following their discharge; and (c) an injunction against breach by the individual defendants of two of the three restrictive covenants. Jurisdiction below was based on diversity of citizenship under 28 U.S.C. § 1332(a) and appears to have existed.
 
 
 9
 The claims for damages were tried to a jury which returned a verdict awarding Economics $6,780 for breach of the three restrictive covenants and $7,140 for fraudulent conversion. A judgment on this verdict was entered on February 28, 1977.
 
 
 10
 On the same day, February 28, 1977, there was a hearing before the District Court on Economics' prayer for injunctive relief. At this hearing, Economics withdrew its request for an injunction as to one of the restrictive covenants, which left as its single claim for injunctive relief its prayer to restrain the defendants from soliciting customers of Economics with whom the individual defendants had had contacts for Economics within the one year prior to their discharges.
 
 
 11
 The District Court on March 9 and 10, 1977, heard the prayer for injunctive relief as already narrowed and received evidence from the parties.
 
 
 12
 After hearing the prayer for an injunction on March 9 and 10, 1977, the District Judge, considering the evidence presented at trial and at the post-trial hearing, denied the prayer with an unpublished opinion. A separate judgment denying the claim for injunctive relief was entered on March 22, 1977.
 
 
 13
 On March 10, 1977, Economics moved for a new trial on the issue of damages for breach of the restrictive covenants (claiming an insufficient award); the motion was denied without opinion on April 4, 1977. This appeal from the two judgments followed.
 
 1.
 
 14
 On appeal, Economics first claims error by the District Court in denying an injunction against defendants pursuant to the terms of the third restrictive covenant. That covenant provides:
 
 
 15
 In consideration of the company's employing him, and its promises set forth above, the Employee agrees that he:3. Will not, for a period of one (1) year after the last day of his work for the Company, and regardless of the cause of his termination, contract, solicit, or accept any business relating to detergents, dishwashing compounds, detergent dispensing equipment, cleaning compounds or floor maintenance products from any customer of the Company whom the Employee contacted for the Company within the period of one (1) year prior to the termination of the employment, nor will he assist any other person, firm, association or corporation to do so.
 
 
 16
 Economics claimed below that it was entitled on the evidence to an injunction against solicitation of specified customers (they were specified in an exhibit (No. 34) containing fifteen names, although the District Judge seems to have thought at times that there were thirteen names, and counsel for appellant thought that there were fourteen names).
 
 
 17
 The termination of employment of defendants was on August 15, 1975. The quoted covenant therefore bound defendants until August 15, 1976. No preliminary injunction was sought. The jury trial on money damages was on February 15-25, 1977. The application for an injunction was first made on February 28, 1977, and by that time the one-year period, in the agreement executed by defendants, had expired. The District Court should on that ground have denied the injunction sought. Instead, the District Court, apparently impressed by a decision on which Economics relied, National Chemsearch Corporation of New York v. Hanker, 309 F.Supp. 1278, 1279, 1281 (D.D.C.1970), decided that, if the facts warranted, he would issue an injunction despite expiration of the time period for which the defendants had agreed to be bound.
 
 
 18
 The District Judge at the February 28, 1977, hearing stated that he would issue an injunction "against Donnolo and Kennedy and Total Chemical Company on the common plan or scheme theory," on the basis of the jury verdict in this respect. However, the District Judge required Economics to prove "that Mr. Griffith actually served in a sales capacity the 14 customers listed on Exhibit 34."
 
 
 19
 An evidentiary hearing was held on March 9-10, 1977, to permit Economics to submit such proof.
 
 
 20
 After this hearing, and on March 22, 1977, an opinion was filed which found that Economics proved what had been required that Griffith did serve in a sales capacity but had failed to prove that Donnolo and Kennedy had so served. This last had not been required of Economics by the District Court, and all parties, especially Economics, were justified in assuming that the Court below had been satisfied as to this.
 
 
 21
 After the opinion was filed, a judgment was filed and entered denying injunctive relief.
 
 
 22
 We agree that the result was correct, but we reach this conclusion on a ground different from that of the Court below.
 
 
 23
 Denial of injunctive relief was required because when the injunction was asked there were no promises of defendants in effect which the District Court could properly enforce. The promises had expired on August 15, 1976.
 
 
 24
 The parties have cited us to no decisions of this Court on the point, and our researches have discovered none. The other courts which have considered the matter are, with one exception, unanimous in declining to grant an injunction to enforce an agreement by a former employee not to compete after the period during which the employee agreed not to compete. Meeker v. Stuart, 188 F.Supp. 272, 276 (D.D.C.1960), Aff'd 110 U.S.App.D.C. 161, 289 F.2d 902 (D.C.Cir.1961); De Long Corp. v. Lucas, 176 F.Supp. 104, 126 (S.D.N.Y.1959), Aff'd, 278 F.2d 804 (2d Cir.), Cert. denied, 364 U.S. 833, 81 S.Ct. 71, 5 L.Ed.2d 58 (1960); Edelman Realty Co. v. Edelman, 344 Mich. 646, 75 N.W.2d 29, 32 (1956); ISS Sales Corp. v. Bell, 47 A.D.2d 796, 366 N.Y.S.2d 67, 70 (3d Dept. 1975); Hayes v. Altman, 438 Pa. 451, 266 A.2d 269, 271 (1970); Abalene Pest Control Service, Inc. v. Hall, 126 Vt. 1, 220 A.2d 717, 722 (1966); Alexander & Alexander , Inc. v. Wohlman, 19 Wash.App. 670, 578 P.2d 530, 540 (1978). See Machen v. Johansson, 174 F.Supp. 522, 531 (S.D.N.Y.1959).
 
 
 25
 Covenants by an employee not to compete have never been especially favored in equity but may be enforced if not unreasonable and if not broader than required for the employer's protection. There is no reason, however, to enforce a covenant which by its terms is no longer in effect.
 
 
 26
 The agreement not to disclose such confidential matter for a period of two years plainly relieved Lucas from such restriction when the two years had expired. Thereafter he was under no such restriction and to impose continuing restraint upon him would not be in accordance with the agreement, nor would the result be equitable.
 
 
 27
 De Long Corp. v. Lucas, 176 F.Supp. at 126, Aff'd, 278 F.2d 804, above cited.
 
 
 28
 We now reach the question as to what relief should be awarded. Although the plaintiff has established his right to an injunction, as of the proper time, nevertheless, since the two-year period referred to in the agreement has expired, no permanent injunction should be issued, for that reason and solely for that reason, and the plaintiff's relief must be limited to damages.
 
 
 29
 Meeker v. Stuart, 188 F.Supp. at 276, Aff'd 110 U.S.App.D.C. 161, 289 F.2d 902, above cited.
 
 
 30
 (G)eneral covenants not to compete which are ancillary to employment will be subjected to a more stringent test of reasonableness than that which is applied to such restrictive covenants ancillary to the sale of a business.
 
 
 31
 With this in mind, we reach the same conclusion reached by other courts which have faced this question. An injunction will not be granted to enforce a restrictive covenant when the restrictive period has by its terms expired.
 
 
 32
 Hayes v. Altman, 266 A.2d at 271, above cited.
 
 
 33
 Our researches have not disclosed any grant of an injunction after an employer's covenant had expired except that cited in the District Court here, National Chemsearch Corp. v. Hanker, 309 F.Supp. 1278 (D.D.C.1970). In this instance, however, there was no discussion of the point nor any indication that the Court or the parties were even aware of it. In any event, we do not approve of the result there reached.
 
 2.
 
 34
 Economics next argues that the jury's award of $6,780 on the breach of contract claim was inadequate and was thus against the weight of the evidence. "The award of $6,780.00, thousands of dollars less than plaintiff's actual damages, is contrary to the weight of the evidence, and the court abused its discretion in denying plaintiff's motion for a new trial limited to damages." (Brief, p. 26.)
 
 
 35
 While not explicitly recognized by Economics, this argument is based on the assumption which we are not free to make that the jury verdict represents a jury finding of a breach of the third restrictive covenant in the employment agreements, that against solicitation during a one-year period of customers of Economics. The argument then requires a further assumption that the jury applied an 8% Profit figure to sales by Total to customers of Economics solicited by the individual defendants. The assumptions amount to nothing more than speculation as to how the jury reached its verdict.
 
 
 36
 There were three restrictive covenants in the employment agreements: (1) against working for someone else while employed by Economics; (2) against giving to anyone else confidential information of Economics; and (3) against soliciting customers of Economics for a defined period after leaving the employment of Economics.
 
 
 37
 The claim for breach of contract was one claim in the complaint, based on all three covenants. The case was tried to the jury as a general claim on all three covenants. There was evidence from which the jury could have found a breach of all three covenants or of any one or more of them. There was evidence on the first covenant that Total was formed in April 1975, four months before the employment of the individual defendants terminated at Economics. There was evidence on the second covenant that valuable records of Economics (described in the testimony) were discovered to be missing from the offices of each of the individual defendants following their exits. There was also evidence, of course, on the third covenant.
 
 
 38
 The claim was submitted by the Court to the jury as a general claim on all three covenants. The instructions of the Court contained this summary of the breach of contract claim: "Now, as I have said, the plaintiff claims that the defendants breached the terms of their Sales Representative Agreements. Should you find that plaintiff has proven these claims by a preponderance of the evidence you should award plaintiff compensatory damages as explained in these instructions."
 
 
 39
 The jury returned its verdict on this claim as a general verdict in the following words: "That we find for the Plaintiff and against the Defendants on the Plaintiff's breach of employment agreement claims and assess the Plaintiff's compensatory damages at $6,780."
 
 
 40
 After this verdict had been returned, Economics moved, by motion filed March 10, 1977, for a new trial on the issue of damages.
 
 
 41
 In his opinion, filed March 22, 1977, denying injunctive relief, the District Judge, who, of course, had tried the case, clearly stated his view of the jury's verdict: "This Court has ruled that the jury could have based its award of compensatory damages upon the defendants' breach of employee covenants Nos. 1 and 2, as well as of employee covenant No. 3, of the sales representative agreements." From the record, we have not been able to determine when and where Judge Foley so ruled, but for present purposes this is of no moment. In any event, the motion for a new trial by Economics was denied by order on April 4, 1977.
 
 
 42
 In Porterfield v. Burlington Northern, Inc., 534 F.2d 142 (9th Cir. 1976), Porterfield had a verdict in a personal injury action, which verdict he felt was inadequate. On appeal, in responding to his argument against the refusal of the District Court to grant his motion for a new trial, this Court said (534 F.2d at 147) (emphasis supplied):
 
 
 43
 Porterfield contends that the jury considered only the stipulated lost wages as damages and then awarded him 10 percent of that amount. He claims that the jury's failure to award anything for his laminectomy and his pain and suffering demonstrates reversible error. The premise of this argument must necessarily be, however, that the jury allotted 90 percent of the negligence to Porterfield. The jury could just as well have added an award of general damages to the lost wages and then allotted 95 percent or more of the negligence to Porterfield. We cannot, by way of speculation, pierce the general verdict to draw the conclusions contended for by Porterfield.
 
 
 44
 Economics makes an extensive argument from Nevada law, but we cannot consider the argument because the "proper role of the trial and appellate courts in the federal system in reviewing the size of jury verdicts is . . . a matter of federal law." Donovan v. Penn Shipping Co., 429 U.S. 648, 649, 97 S.Ct. 835, 837, 51 L.Ed.2d 112 (1977).
 
 3.
 
 45
 Economics finally assigns as error the disallowance in the District Court of part of its bill of costs.
 
 
 46
 The bill of costs submitted to the Clerk was in total $3,936.14.
 
 
 47
 The costs as taxed by the Clerk were $1,339.34. The difference of $2,596.80 was made up of: (a) disallowance of the expenses of depositions of the three individual defendants, which depositions were not used as evidence at the trial; (b) reduction in days for which attendance fees and subsistence allowances were taxed for two witnesses; and (c) reduction of mileage for which a travel allowance for witnesses was taxed. The Clerk filed a memorandum explaining why costs were taxed at the amount determined.
 
 
 48
 Economics asked for a review by the District Court (Fed.R.Civ.P. 54(d)). The review was referred to a Magistrate, who by order filed April 27, 1977, changed the Clerk's taxation by allowing the full amount in the bill of costs for the witness McCarty but declined to make any other change in the costs as taxed. The action of the Magistrate increased the costs allowed to Economics to $1,728.14. The decision of the Magistrate was affirmed by the District Court in an order entered August 24, 1977.
 
 
 49
 The item responsible for the largest reduction in the bill of costs was mileage for witnesses, which was restricted to actual mileage travelled in the State of Nevada or 100 miles, whichever was greater. It is clear, since Farmer v. Arabian American Oil Co., 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), that, when taxing costs, whether to follow the 100-mile restriction (Fed.R.Civ.P. 45(e)) or not is entirely within the discretion of the District Court. The restriction, however, "is a proper and necessary consideration in exercising discretion in this field." Farmer v. Arabian American Oil Co., above cited at 234, 85 S.Ct. at 417. See Moylan v. AMF Overseas Corp., 354 F.2d 825, 829-30 (9th Cir. 1965).
 
 
 50
 The other items here raised by Economics disallowance for expenses of depositions not used at trial and extra days of subsistence and attendance fees for a witness seem also clearly within the discretion of the trial court. "The district court has broad discretion in apportioning and taxing costs where, as here, neither party completely prevailed." Cornwell Quality Tools Co. v. C. T. S. Co.,446 F.2d 825, 833 (9th Cir. 1971).
 
 
 51
 We are unable on this record to find an abuse of discretion by the District Court in the matter of costs.
 
 
 52
 AFFIRMED.
 
 
 
 *
 Inzer B. Wyatt, United States District Judge for the Southern District of New York, sitting by designation