[No. 52944–2. En Banc. January 19, 1989.]

CHARLES F. PERRY, ET AL, *Appellants,* v. JUDITH MORAN, *Respondent.*

*Tousley, Brain, Reinhardsen & Block,* by *William H. Block* and *Christopher I. Brain,* for appellants.

*Lucas, Glase, Sherman & Hendrickson, Peter J. Lucas,* and *Merrilee A. MacLean,* for respondent.

*Marvin L. Gray, Jr.,* and *Samuel Saracino* on behalf of Moss Adams and Hagen, Kurth, Perman & Co., amici curiae for appellants.

CALLOW, C.J.—Upon reconsideration of *Perry v. Moran,* 109 Wn.2d 691, 748 P.2d 224 (1987), we affirm our earlier holding with one modification. We delete the last four paragraphs of the opinion as reflected in the earlier report and substitute therefor the following:

The defendant contends that even if the covenant not to serve Perry, Whittemore and Tanner (PWT) clients is enforceable, the amount of liquidated damages for violation of the covenant is excessive. The liquidated damages clause calls for Moran to pay PWT for a 3-year period 50 percent of the amount she bills former clients to whom she has provided services in violation of the covenant not to compete.

██ Washington law favors the enforcement of a liquidated damages clause. As stated in *Management, Inc. v. Schassberger*, 39 Wn.2d 321, 326, 235 P.2d 293 (1951):

> We are loathe to interfere with the rights of parties to contract as they please between themselves, and the fact that the parties to a contract call a sum stipulated to be paid in case of breach of the contract liquidated damages is a circumstance to be given serious consideration in determining whether it is in fact liquidated damages.

A liquidated damages clause will be enforced if the amount fixed is a reasonable forecast of just compensation for the harm caused by the breach and the harm is such that it is incapable or very difficult of ascertainment. *Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 559, 730 P.2d 1340 (1987). The harm caused by the breach of a covenant not to compete is very difficult to accurately quantify. *Walter Implement*, 107 Wn.2d at 559; *Knight, Vale & Gregory v. McDaniel*, 37 Wn. App. 366, 371, 680 P.2d 448, *review denied*, 101 Wn.2d 1025 (1984); *Mead v. Anton*, 33 Wn.2d 741, 756, 207 P.2d 227, 10 A.L.R.2d 588 (1949). Here, the trial court heard sufficient evidence to support the conclusion that the liquidated damages amount was a reasonable forecast of just compensation for the harm. We would have no difficulty affirming its decision had the trial court held the clause enforceable.

However, because of its determination that Moran had not violated the terms of the covenant as erroneously modified, the trial court made no determination as to the reasonableness of the liquidated damages clause. Moreover, the defendant has not been permitted to introduce evidence on this issue. Therefore, it would be premature for this court to determine the enforceability of the liquidated damages clause.

The dismissal and the trial court's award of attorney's fees to the defendant are reversed. Judith Moran's covenant not to perform accounting services for PWT client accounts is valid and enforceable. The cause is remanded to the trial court for further proceedings to establish whether

the sum set by the liquidated damages provision is reasonable and, if not, what sum is justified. *See Alexander & Alexander, Inc. v. Wohlman,* 19 Wn. App. 670, 578 P.2d 530 (1978). The award of attorney's fees for both trial and appellate representation shall abide the final disposition of the cause. RAP 18.1(e).

DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., concur.

UTTER, J. (dissenting)—I agree with the majority to the extent that it remands the case for determination of what liquidated damages are reasonable. However, I cannot agree that this court should resolve all of the remaining issues and dispose of the case. The unique procedural posture of the case precludes such action. We are not reviewing a completed trial; the trial court dismissed the case after plaintiff rested. Although the plaintiff spent 4 days presenting its case at trial, the defendant has never had the opportunity to present her evidence or to present any defense she may have. The trial court specifically reserved ruling on defendant's breach of contract defense. Finding of fact 28. The majority's revised opinion would remand only for determination of the reasonableness of damages, not Ms. Moran's defenses. This violates our own rules and the defendant's constitutional rights to due process of law. Const. art. 1, § 3; U.S. Const. amend. 14.

On appeal from a judgment granting dismissal made at the close of plaintiff's case, our review is limited to determining whether there was sufficient evidence to establish a prima facie case for the plaintiff. *See Spring v. Department of Labor & Indus.,* 96 Wn.2d 914, 918, 640 P.2d 1 (1982); *Schmidt v. Pioneer United Dairies,* 60 Wn.2d 271, 272, 373 P.2d 764 (1962); *Richards v. Kuppinger,* 46 Wn.2d 62, 278 P.2d 395 (1955). In our review of a judgment of dismissal made *before* the defendant has presented any evidence, we cannot summarily dispose of the entire case. Court rules specifically provide that a defendant's motion to dismiss

after plaintiff rests may be made "without waiving his right to offer evidence in the event the motion is not granted . . ." CR 41(b)(3); *see* 4 L. Orland, Wash. Prac., *Rules Practice* § 5502 (3d ed. 1983 & Supp. 1988). The majority's action is contrary to our established law and procedures.

Aside from the question of possible defenses, the reasonableness of a covenant not to compete can be determined as a matter of law only if there are no disputed facts. *See Knight, Vale & Gregory v. McDaniel,* 37 Wn. App. 366, 368, 680 P.2d 448, *review denied,* 101 Wn.2d 1025 (1984) (hereafter *KVG*). Factual analysis is critical. General rules are not possible because each case "must be decided on its own particular set of facts. *All* of the circumstances must be taken into account . . ." (Footnote omitted.) 11 S. Williston, *Contracts* § 1447, at 1024 (3d ed. 1968); *Wood v. May,* 73 Wn.2d 307, 312, 438 P.2d 587 (1968). Therefore we must determine which facts are critical and whether we have all the critical facts before this court.

Professor Williston provides guidance in the process of discussing one court's thorough and "outstanding" inquiry into the reasonableness of a covenant not to compete. 11 S. Williston, at §§ 1447, 1643A (discussing *Arthur Murray Dance Studios of Cleveland, Inc. v. Witter,* 105 N.E.2d 685 (Ohio C.C.P. 1952) (where the plaintiff sought an injunction)). In determining whether the restraint was greater than reasonably necessary to protect the employer, the *Witter* court posed 41 "trenchant" questions, among them:

> "12. Did employee's work give him opportunity to become acquainted with employer's customers?
> "13. How many of employer's customers did employee come to know?
> "14. Was this particular employee practically the employer's sole and exclusive contact with the customer?
> "15. Was employee's contact with employer's customers a regular, re–occurring contact?
> "16. Was employee's contact with employer's customers a close, personal, direct and ingratiating contact that gave employee such a hold on customers that they would follow him to the rival?

(Footnotes omitted.) 11 S. Williston § 1447, at 1028–29 (noting that the court buttressed each question with ample citations). Although no one question is conclusive on the issue of reasonableness, each highlights a circumstance or fact of the case that should be considered.

The emphasis on confidentiality is also consistent with the general principal/agent axioms. The Restatement holds an agent accountable for "profits made by the sale or use of trade secrets and other confidential information . . ." Restatement (Second) of Agency § 396(c) (1958).[1] Some commentators would restructure judicial analysis of covenants not to compete by eliminating reference to contract law and focusing entirely on agency principles. *See* Closius & Schaffer, *Involuntary Nonservitude: The Current Judicial Enforcement of Employee Covenants Not To Compete—A Proposal for Reform*, 57 S. Cal. L. Rev. 531 (1984). Under such analysis, the *only* supportable inquiry involves the extent to which the employee has gained and is using confidential information. *See generally* Closius & Schaffer, 57 S. Cal. L. Rev. 531.

Consistent with both the traditional contract approach and the proposed agency approach, our own cases suggest that confidentiality factors must be considered. *See Racine v. Bender,* 141 Wash. 606, 252 P. 115 (1927); *KVG.* The courts in both *Racine* and *KVG* stressed the importance of the accountant's "confidential knowledge . . . of all the important and vital matters concerning the [client's] business". *Racine,* at 608.

> [T]he evidence showed that the business of a certified public accountant is such that *the person who actually performs the labor incident thereto* acquires an intimate knowledge of the business of the client, preparing audits of the business, income tax returns, and other matters *very confidential* in their nature, and vital to the business itself.

---

[1] The Restatement imposes the duty whether or not the agent competes with the principal.

(Italics mine.) *Racine,* at 608. The language in *KVG* is similar:

> This [business] interest is enhanced in the sphere of public accounting because the nature of the accountant–client relationship is such that employees of such a firm gain extensive, valuable knowledge of the clients' business and internal operations and develop a close, familiar working relationship with the client.

37 Wn. App. at 370. The confidentiality element would give a terminating accountant a distinct competitive advantage against her former firm.

The covenants in both *Racine* and *KVG* restricted the accountant from performing services for persons *with whom the accountant came into contact* while an employee of the firm. *Racine,* at 607, 610; *KVG,* at 369. The latter court stressed the proviso:

> In this case, KVG has sought enforcement of the covenant only as it pertains to performing accounting services during the 3–year period for only those former clients of KVG with whom defendants came into contact as a direct result of their employment. To this extent, we find that the covenant is reasonable and lawful.

*KVG,* at 370.[2]

In contrast, the covenant in the present case prevents Moran from servicing *any* former PWT client, whether or not she had any contact with that account while an employee of PWT. The covenant is broader than those recognized as reasonable in our previous decisions. The majority offers no justification for departing from previous analysis, but rather calls the cases "consistent." Perhaps the majority finds consistency by assuming that, as head of the retirement department, Ms. Moran must have had confidential information about every client that might seek her services after she left PWT. We cannot assume these facts

---

[2]The court specifically disclaimed approving the entire covenant, citing possible problems with overbreadth. The questionable provisions prohibited performing work for "(1) 'any person, firm or corporation with whom I come in contact . . .', and (2) 'members of the staffs of your clients as well as occupants of their offices. . . .'" 37 Wn. App. at 370 n.1.

as she has not yet presented her defense. Moran claims she neither met nor serviced the accounts of some of the PWT clients while she was employed there. Report of Proceedings, at 381. She also claims that the evidence will show that although she was the manager of the retirement department, her authority and treatment were not commensurate with her title. Report of Proceedings, at 404. Because Ms. Moran has had no opportunity to present evidence regarding these facts, which should be part of the reasonableness analysis, we must remand this issue to the trial court. Failure to do so would be a direct denial of due process.

BRACHTENBACH and PEARSON, JJ., concur with UTTER, J.