# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DR. ROBERT EMERICK, M.D., )
                                  )      No. 72834-2-I
     Appellant/Cross Respondent, )
                                    )      DIVISION ONE
             v.                    )
                                    )      PUBLISHED OPINION
CARDIAC STUDY CENTER, INC., P.S., )
a Washigton corporation, )
                                    )      FILED: August 24, 2015
     Respondent/Cross Appellant. )

APPELWICK, J. — Emerick's employment agreement with CSC included a noncompete covenant that prevented Emerick from practicing cardiology competitively in Pierce County or Federal Way for five years after termination. Days before his termination, Emerick sought declaratory relief that the noncompete covenant was unenforceable. The trial court concluded that the geographic and temporal restraints in the noncompete covenant were unreasonable. It reformed the restraints accordingly and concluded that the noncompete was reasonable and enforceable as reformed. Emerick appeals, arguing that noncompete agreements involving physicians violate public policy as a matter of law and that the reformed geographical and temporal restrictions in the noncompete covenant are excessive. We affirm.

## FACTS

Cardiac Study Center, Inc., P.S. (CSC) was founded in 1966 and provides cardiology services. CSC has four Pierce County offices, each located near a main hospital. Doctor Robert Emerick began working at CSC in 2002. Immediately prior to joining CSC, Emerick was a cardiologist in Memphis, Tennessee. After Emerick had practiced with CSC for two years as a general employee, CSC offered him the opportunity to become a shareholder in the practice. In order to become a shareholder, Emerick—

like all others seeking shareholder status—was required to sign a shareholder employment agreement (Agreement). Emerick signed the Agreement on February 1, 2004.

The Agreement included a noncompete covenant in paragraph 13(e). Emerick agreed that during his employment and for five full years after termination of his employment for any reason, he would not directly or indirectly "engage in the practice of cardiac medicine in any manner which is directly competitive with any aspect of the business of" CSC within Pierce County or Federal Way. Paragraph 13(f) of the agreement stated that CSC and Emerick agree and stipulate that the noncompete covenant in paragraph 13(e) is "fair and reasonably necessary for the protection of [CSC]'s Confidential Information, goodwill, and other protectable interests." It further stated that "[i]n the event a court of competent jurisdiction should decline to enforce any provision of paragraph 13(e), such paragraph shall be deemed to be modified to restrict [Emerick]'s competition with [CSC] to the maximum extent, in both time and geography, which the court shall find enforceable." Paragraph 13(g) stated that Emerick acknowledged that any breach of the noncompete would give rise to injury not adequately compensable through damages and that CSC would be entitled to seek injunctive relief.

On September 9, 2009, CSC sent Emerick a letter informing him that the Agreement—and Emerick's employment with CSC—would terminate on September 30, 2009. On September 24, 2009, days before termination, Emerick filed a lawsuit against CSC seeking injunctive and declaratory relief to invalidate the noncompete provisions in the Agreement. Subsequently, CSC filed a motion for summary judgment. On November 6, 2009, Emerick filed a cross motion for summary judgment. On March 5, 2010, the trial

court denied CSC's motion for summary judgment and granted Emerick's cross motion for summary judgment. The trial court concluded that the noncompete provisions of paragraph 13(e) of the Agreement were not enforceable, because they violate public policy. The court further ruled that the remainder of paragraph 13 was still enforceable.

Shortly thereafter, CSC sought discretionary review of the trial court's order on the cross motions for summary judgment. Division Two denied CSC's motion for discretionary review, and it awarded attorney fees to Emerick as the prevailing party on September 27, 2010. On December 3, 2010, the trial court entered a judgment in favor of Emerick including reasonable attorney fees and costs. CSC then appealed the judgment. See Emerick v. Cardiac Study Ctr., Inc., 170 Wn. App. 248, 286 P.3d 689 (2012) (Emerick I).

Relying on the trial court's favorable judgment, but while CSC's appeal was pending, Emerick opened a new practice, Choice Cardiovascular. Emerick opened the practice about a quarter of a mile away from one of CSC's Pierce County offices in June 2011. Emerick describes Choice Cardiovascular as a unique concierge cardiovascular medicine practice that is different than CSC's "traditional" practice.

In Emerick I, Division Two held that the trial court misapplied Washington law when it granted Emerick's motion for summary judgment. Id. at 250. The Emerick I court said the trial court erred, because it did not apply the three part test established by the Washington Supreme Court for determining whether a noncompete covenant is reasonable.[1] Id. at 259. Consequently, it reversed the trial court's order granting

---

[1] The test for reasonableness asks (1) whether the restraint is necessary to protect the employer's business or goodwill, (2) whether it imposes on the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill, and

3

summary judgment, vacated the attorney fee award to Emerick, and remanded for further proceedings. Id. It also awarded CSC its statutory attorney fees. Id. Emerick filed a petition for review to the Washington Supreme Court, and it was denied. See Emerick v. Cardiac Study Ctr., Inc., 175 Wn.2d 1028, 291 P.3d 254 (2012).

On May 17, 2013, on remand, CSC again filed a motion for summary judgment to enforce the noncompete covenant. On September 11, 2013, the trial court entered an order granting CSC's motion for summary judgment enforcing the noncompete covenant and providing CSC injunctive relief. It concluded that the noncompete covenant is necessary to protect CSC's protectable business interests. But, it also concluded that the covenant not to compete in paragraph 13(e) is overly broad and unreasonable and therefore unenforceable with respect to its geographic and temporal restraints. As a result, the trial court reformed the covenant to reduce the geographical limitations on Emerick's cardiology practice to a two mile radius of CSC's current offices and reduced the temporal restriction to four years. The trial court found that the four years began in September 2009 when Emerick was terminated. It deducted 20 months from that four year period for the time between September 2009 and June 2011 before Emerick began improperly competing with CSC. The trial court ordered that the remaining 28 months, would begin once Emerick relocated his new practice. The trial court clarified that nothing would enjoin Emerick from practicing cardiology at a hospital or emergent care clinic, making house calls, prescribing medicine, ordering tests, or otherwise caring for patients,

---

(3) whether enforcing the covenant would injure the public through loss of the employee's service and skill to the extent that the court should not enforce the covenant, i.e., whether it violates public policy. Perry v. Moran, 109 Wn.2d 691, 698, 748 P.2d 224 (1987), judgement modified on recons. on other grounds, 111 Wn.2d 885, 766 P.2d 1096 (1989).

4

and nothing would preclude a patient from selecting the cardiologist of his or her choice. Finally, the trial court concluded that CSC obtained injunctive relief and substantial enforcement of the noncompete agreement against Emerick and was thus the substantially prevailing party.

On September 25, 2013, CSC, as the substantially prevailing party, moved for attorney fees. On October 18, 2013, the trial court entered its judgment and findings of fact and conclusions of law regarding the award of attorney fees and costs to CSC. It concluded that CSC was entitled to attorney fees and costs for all activities, hearings, and motions related to the litigation except the fees and costs of the Emerick I appeal. The trial court found that the fees on the appeal were denied by Division Two and declined to award them.

Emerick appeals the trial court's order granting CSC's motion for summary judgment, its judgment and order granting CSC's motion for prevailing party attorney fees and costs, and its findings of fact and conclusions of law regarding CSC's award of attorney fees and costs. Specifically, Emerick claims the trial court erred when it granted CSC injunctive relief beyond the terms of the noncompete, when it found that CSC was the substantially prevailing party, and when it awarded attorney fees without making necessary reductions. CSC cross appeals the trial court's denial of its request for fees from its earlier successful appeal.

DISCUSSION

I.   Reasonability and Enforceability of the Noncompete Covenant

Emerick argues that the trial court erred in granting CSC's motion for summary judgment. Specifically, he argues that the covenant, even as reformed, is unreasonable and unenforceable.

This court reviews a grant or denial of summary judgment de novo. Washburn v. City of Federal Way, 169 Wn. App. 588, 609, 283 P.3d 567 (2012), aff'd, 178 Wn.2d 732, 310 P.3d 1275 (2013). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In conducting this inquiry, the court must view all facts and reasonable inferences in the light most favorable to the nonmoving party. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 860-61, 93 P.3d 108 (2004).

As a preliminary matter, Emerick argues that summary judgment was inappropriate because there are disputed material facts as to the reasonableness of the noncompete covenant. These facts include whether (1) Emerick traded on CSC's goodwill in establishing his new practice, (2) Emerick is in competition with CSC, (3) CSC has any goodwill to protect given Emerick's unique practice, different patient pool, and ability to continue seeing patients that he treated while working for CSC, and (4) the location of Emerick's new practice unreasonably competes with CSC's location given the fact that Emerick has no signage and cannot be seen from CSC's office. Emerick contends that he raised these genuine issues of material fact below and CSC failed to rebut them, relying instead on conclusory statements.

6

But, these facts go to whether Emerick's current cardiology practice is causing actual harm to CSC, which has no bearing on the reasonableness and enforceability determination. That determination considers the reasonability of the noncompete covenant as written as opposed to whether and how much the employer experiences actual harm and competition.[2]

Under Washington law, noncompete covenants are enforceable if they are reasonable and lawful. Emerick I, 170 Wn. App. at 254. The determination of whether a covenant is reasonable is a question of law. See Alexander & Alexander, Inc. v. Wohlman, 19 Wn. App. 670, 684, 578 P.2d 530 (1978). As the reasonability of the noncompete covenant is a legal question, this court's review is de novo. Labriola v. Pollard Grp., Inc., 152 Wn.2d 828, 832, 100 P.3d 791 (2004).

The three part test for reasonableness asks (1) whether the restraint is necessary to protect the employer's business or goodwill, (2) whether it imposes on the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill, and (3) whether enforcing the covenant would injure the public through loss of the employee's service and skill to the extent that the court should not enforce the covenant, i.e., whether it violates public policy. Perry v. Moran, 109 Wn.2d 691, 698, 748

---

[2] It is worth noting that much of the case law considering the enforceability and reasonability of noncompete covenants does discuss whether the employee was actually in competition at the time the action commenced. See, e.g., Perry, 109 Wn.2d at 694; Knight, Vale, Gregory & McDaniel, 37 Wn. App. 366, 367, 680 P.2d 448 (1984). But, those cases are all breach of contract cases where the employer needed to prove actual harm—not actions for declaratory relief where only general covenant enforceability was at issue. Perry, 109 Wn.2d at 694; McDaniel, 37 Wn. App. at 367; Nw. Indep. Mfrs. v. Dep't of Labor & Indus., 78 Wn. App. 707, 712, 899 P.2d 6 (1995).

P.2d 224 (1987), judgment modified on recons. on other grounds, 111 Wn.2d 691, 748 P.2d 224 (1987).

A. Necessary for Employer

The first factor in the three part test is whether the noncompete restraint is necessary to protect the employer's business or goodwill. Id.

A restrictive covenant protects an employer's business as warranted by the nature of employment. Wood v. May, 73 Wn.2d 307, 310, 438 P.2d 587 (1968). An employee who joins an established business gains access to his employer's customers and acquires valuable information as to the nature and the character of the business. Id. This exposure to the employer's clients and business model allows the employee to compete with his employer after he leaves the employment. Id. To protect the employer's business, equity allows the employer to require the employee to sign a noncompetition agreement. Id.

Specifically, the law in Washington is clear that an employer has a " 'legitimate interest in protecting its existing client base' " and in prohibiting the employee from taking its clients. Emerick I, 170 Wn. App. at 255 (quoting Perry, 109 Wn.2d at 700). And, Washington courts have recognized the importance of an employer investment, providing office space, equipment, and an existing patient following, in the medical noncompete agreement context. Ashley v. Lance, 75 Wn.2d 471, 476, 451 P.2d 916 (1969).

Here, there is clear evidence in the record that CSC had protectable goodwill and business interests. CSC spent 40 years developing goodwill in the community before it hired Emerick. Before Emerick arrived, CSC was a well-established, longstanding cardiology practice with a large patient census, a highly recognized name, a strong

8

reputation, and referral sources through all of its long established relationships. Emerick acknowledged these facts when he signed the Agreement, and, as a shareholder, he would have had the benefit of enforcing the noncompete against any other departing member.

Further, CSC provided Emerick with an immediate client base and established referral sources when Emerick moved to Washington to practice in an oversaturated and competitive cardiology market.[3] Emerick, as a shareholder, benefitted from CSC's reputation, connections, and facilities. And, he was privy to information about CSC's business—including confidential information.

Still, Emerick argues that CSC failed to demonstrate why the noncompete was necessary to protect its goodwill and business interests. He contends that it was not enough that CSC prove, via generalized statements, that it has protectable business interests. He claims that CSC needs to prove that the noncompete is necessary to protect its business interests, because Emerick has already taken actual affirmative steps to threaten CSC's business interests.

He is wrong. CSC needs to demonstrate a protectable interest exists and that Emerick could pose a threat to that interest if not adequately restrained. CSC has done so. It does not have to prove actual competition or damages. Emerick does not dispute that he could have competed and damaged CSC. He merely asserts that he has not relied on CSC's referral sources or traded on his prior employment at CSC since leaving

---

[3] Emerick argues that CSC's claim that its client base is a protectable business interest is belied by the fact that CSC acknowledged that Emerick can continue seeing the patients he treated while he was employed by CSC. But, that argument acknowledges both that the interest exists and that only a portion of it is not subject to protection.

CSC, and therefore the enforcement of the covenant is not necessary. But, it is the potential to compete—not the actual competition—that makes the noncompete necessary. In fact, he has an office in close proximity to CSC from which he practices cardiology. The risk is clear, as is the need for the restraint.

We hold that CSC had business interests and goodwill to protect and that the noncompete agreement was necessary to protect those interests.[4]

B. Scope of Restraint

The second reasonableness factor focuses on the extent to which the covenant adversely affects the employee's ability to earn a living. Emerick I, 170 Wn. App. at 256. Generally, a court determines the reasonableness of a covenant by analyzing its geographic and temporal restrictions. See Wood, 73 Wn.2d at 311-12. If the trial court determines that certain terms of the covenant are unreasonable—such as the geographic and temporal scope of the restraint—the entire covenant does not fail. Id. at 312. The court should still seek to enforce the covenant to the extent reasonably possible to accomplish the contract's purpose.[5] Id. Specifically, the court considers whether partial

---

[4] Emerick also relies on an unpublished federal order to argue that the noncompete covenant here fails under this first factor of the test, because noncompete covenants should never create general restrictions on competition. See Order of the U.S. District Court, Amazon.com, Inc. v. Powers, 2012 WL 6726538, at *9 (W.D. Wash. Dec. 27, 2012). But, even assuming Amazon was binding authority on this court, the Amazon court conceded that although Washington courts have looked more favorably on restrictions against working with specific former clients or customers, Washington courts will enforce general noncompetition restrictions that apply in a limited geographical area. Id. at *9. Here, the trial court enforced the noncompete, but with geographic restrictions. Therefore, Emerick fails to provide support for his assertion that the generally restrictive nature of the noncompete is per se unnecessary to protect CSC's interests.

[5] Emerick also agreed to this partial enforcement when he signed the Agreement. Paragraph 13(f) of the Agreement stated that "In the event a court of competent jurisdiction should decline to enforce any provision of paragraph 13(e), such paragraph

10

enforcement is possible without injury to the public and without injustice to the parties. Id. at 313.

In Emerick I, Division Two instructed the trial court to balance CSC's actual protectable business interests against the time and geographic restrictions on Emerick's ability to earn a living. 170 Wn. App. at 257. On remand, as to the geographic restriction, the trial court accepted CSC's concession that the covenant as written—preventing Emerick from practicing in all of Pierce County and Federal Way—was too broad. The trial court took judicial notice of a map of Pierce County and concluded that a two mile area of protection around each of CSC's offices would serve to protect CSC's business interests, but would also allow Emerick viable areas of Pierce County in which to locate his practice. And, the trial court emphasized that the noncompete covenant does not restrict Emerick's ability to work at any hospital. As to the temporal restriction, the trial court reformed the covenant's original restraints to four years instead of the five years originally in the covenant. It reasoned that four years would be appropriate to protect CSC's interests in being free of competition from Emerick and that it would be a reasonable amount of time for Emerick to build a practice at a place that is reasonably distant from CSC's current offices.

Under the terms of the reformed noncompete covenant, Emerick can practice cardiology at a hospital or emergent care clinic, make house calls, prescribe medicine, order tests, set up an office outside of the geographically limited area, and otherwise care for patients he previously treated at CSC or any other patients who wish to see him.

---

shall be deemed to be modified to restrict [Emerick]'s competition with [CSC] to the maximum extent, in both time and geography, which the court shall find enforceable."

Emerick is only precluded from establishing an office within the geographical areas set by the terms of the covenant and from soliciting CSC's patients. Still, Emerick argues that the geographic and temporal restraints the covenant imposes—even the reformed restraints—are excessive and unreasonable.[6]

Emerick argues that as a matter of law, the temporal restraint is unreasonable, because no Washington appellate court has ever found that a four or five year restrictive covenant is reasonable. He cites to Perry in which the court stated, "It may be that a clause forbidding [accounting services] for a 5–year period is unreasonable as a matter of law." 109 Wn.2d at 703-04. But, the Perry court did not hold that a five year noncompete is unreasonable as a matter of law. And, the noncompete at issue in Perry did not have geographical limitations[7]—distinguishing it from the temporally and geographically limited noncompete at issue here. Id. at 693, 701-02.

Emerick also relies on Armstrong v. Taco Time International, Inc., 30 Wn. App. 538, 541, 635 P.2d 1114 (1981) to support that no Washington appellate court has ever found a four or five year temporal restraint reasonable. The original noncompete covenant in Taco Time prevented former franchisees from selling Mexican food nationally

---

[6] Emerick contends that this court must consider the reasonableness of the geographic and temporal limitations separately. In so far as Emerick urges this court to completely divorce the reasonability of the noncompete covenant's temporal limitation from the geographic limitations, his argument is flawed. While courts have engaged in the geographic and temporal reasonableness analyses separately, Emerick points to no authority that explicitly says the two factors must be considered in isolation.

[7] Emerick also relies on Labriola, 152 Wn.2d at 847 (Madsen, J., concurring) for the assertion that broad sweeping postemployment restraints that generally limit competition are never reasonable. But, the majority in Labriola did not reach the determination as to whether the noncompete agreement was reasonable. Id. at 842. And, the noncompete agreement analyzed in Justice Madsen's concurrance in Labriola was much broader in geographical scope (75 miles) than the noncompete covenant here. Id. at 847, 831.

12

for five years after termination of the franchise. Id. at 540. The trial court reduced the five year noncompete to two-and-a-half-years. Id. at 541. The Court of Appeals also reformed the geographic restrictions of the noncompete. Id. at 545. It reduced the national scope of the covenant to areas covered by existing franchise agreements with which the former franchisee would be competing. Id. Even though the covenant in Taco Time was reformed to a shorter duration than the four or five years here, the geographic limitations in Taco Time were more restrictive and had the potential to exclude very large geographic areas. See id. Therefore, Emerick errs in so far as he relies on Taco Time for the assertion that two-and-a-half-years is a more appropriate temporal restriction without considering the connected geographic limitations.

Emerick argues that although the trial court correctly concluded that the original five year temporal restraint was unreasonable, it erred when it rewrote the restraint for "such a lengthy time period"—four years. But, none of the case law cited leads us to conclude that Emerick's argument that a four or five year temporal term in a noncompete covenant is per se unreasonable as a matter of law. The temporal term must be considered in the context of the entire convenant.

Emerick also argues that the trial court erred in concluding that a two mile geographic restriction is reasonable. Emerick argues that there is no evidence in the record showing that such a restriction is necessary to preserve CSC's legitimate business interests. In support of his argument, Emerick once again relies on evidence that his new practice is not attracting any patients or business away from CSC. This argument is misplaced. The necessity of some restriction was addressed in consideration of the first

factor. Consideration of duration and geography are more properly focused on whether the restriction is excessive.

Washington courts have previously concluded that geographically restricted areas greater than two miles are reasonable. See, e.g., Taco Time, 30 Wn. App. at 544-45 (concluding that a 25 mile geographic limitation might be insufficient to protect franchisees from competition); Alexander, 19 Wn. App. at 687-88 (concluding that a geographic limitation of the "greater Seattle area" was reasonable). None of the case law cited establishes that the two mile geographic restraint is per se unreasonable as a matter of law.

Under the reformed noncompete, Emerick is not restrained from practicing cardiology at any hospital or emergent care clinic, making house calls, prescribing medicine, ordering tests, or otherwise caring for patients. While Emerick is restricted from establishing a practice within a two mile radius of any existing CSC office for four years, the reformed noncompete does not preclude him from establishing a competitive cardiology practice immediately outside of the restricted area. Emerick has not established, on balance, that the reformed noncompete covenant as a whole unreasonably infringes on his ability to earn a living in cardiology or that it provides unreasonable protection to CSC.

We conclude that the temporal and geographic scope of the reformed covenant is reasonable.

C. Public Policy

The public policy factor of the three part reasonableness test requires the court to balance possible harm to the public by not enforcing the covenant against the employer's

right to protect its business. Wood, 73 Wn.2d at 309-10. Emerick first argues that CSC's noncompete covenant creates a substantial risk of injury to the public and that restrictive covenants against doctors violate public policy as a matter of law. In so arguing, Emerick effectively asks this court to disregard the first two factors of three part test.

In Emerick I, Division Two reiterated the three part test and stated that "Washington courts have not yet held that restrictive covenants between physicians are unenforceable." 170 Wn. App. at 259. The Emerick I court criticized Emerick's argument that the balancing was unnecessary and criticized his reliance on cases from other jurisdictions that have declined to enforce covenants between physicians. Id. at 258-59. It reasoned that reliance on cases from other jurisdictions was inappropriate, because some of the other jurisdictions have legislatively precluded restrictive covenants in a medical setting and Washington has not done so. Id. And, it cited to Ashley, 75 Wn.2d 473, where the Washington Supreme Court upheld a noncompete agreement among physicians. Emerick I, 170 Wn. App. at 259. After Emerick I was decided, the Washington Supreme Court denied Emerick's petition for review. See Emerick v. Cardiac Study Ctr., Inc., 175 Wn.2d 1028, 291 P.3d 254 (2012).

Therefore, to the extent Emerick claims that all noncompete covenants between physicians are void as a matter of public policy—and attempts to avoid engaging in the requisite three part analysis and individualized balancing test under Washington law—his argument fails. But, we must still consider whether enforcement of the covenant creates a possibility of harm to the public. See Emerick I, 170 Wn. App. at 257. Such harm may include restraint of trade, limits on employment opportunities, and denial of public access

15

to necessary services. Id. And, if necessary, we must balance these concerns against the employer's right to protect its business. Id.

Under the reformed covenant, Emerick is able to practice in Pierce County and Federal Way. The proscribed areas are circles of a two mile radius. This would not force Emerick's patients to travel inordinate distances. And, nothing in the covenant would preclude Emerick from practicing cardiology on his former or new patients at any hospital or preclude a patient from selecting and using the cardiologist of his or her choice. Therefore, we conclude that the reformed covenant does not result in denial of public access to necessary services or cause any other harm to the public.

After applying the appropriate three part test, we conclude that the reformed noncompete covenant is reasonable and enforceable.

## II. Injunctive Relief

Next, Emerick argues that even if the covenant as reformed by the trial court is reasonable and enforceable as written, the trial court erred when it granted injunctive relief and when it tolled the duration of the noncompete until Emerick relocates his office.

The trial court ordered that for 28 months after Emerick relocates his cardiology practice from its current address, Emerick is enjoined from maintaining his practice in a location within two miles of CSC's offices. The trial court reasoned that Emerick was not competing with CSC from his termination in September 2009 to June 2011 when he opened his practice—20 months. Therefore, it concluded that Emerick was entitled to credit for those 20 months and needed to honor only the remaining 28 months of the 48 month restriction.

Because a trial court has broad discretionary authority to fashion equitable remedies, this court reviews such remedies under the abuse of discretion standard. Cornish College of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 221, 242 P.3d 1 (2010).

Emerick first argues that injunctive relief is not available after a noncompete covenant expires.[8] He cites to Alexander for this assertion. In Alexander, the Court of Appeals held that because the noncompete covenant had expired by the time the case reached the Court of Appeals, it was not within its authority to award injunctive relief. See 19 Wn. App. at 688. But, it specifically stated that had the trial court found that the noncompete covenants were valid, it could have granted injunctive relief because the covenant had not yet expired at that point. Id.

Here, at the time the trial court ordered the injunctive relief, September 11, 2013, the original terms of the five year noncompete had not yet expired. The original five year noncompete would not have expired until September 30, 2014. Because the noncompete covenant was still viable at the time the trial court awarded the injunctive relief, this case is distinguishable from Alexander.

Emerick's reliance on National School Studios, Inc. v. Superior School Photo Service, Inc., 40 Wn.2d 263, 242 P.2d 756 (1952) and Economics Laboratory, Inc. v. Donnolo, 612 F.2d 405 (9th Cir. 1979) is similarly misplaced. In National Schools, the

---

[8] Emerick also assigned error to the trial court's conclusion that he was in competition with CSC in violation of the noncompete covenant and claims that there are disputed facts that exist as to whether injunctive relief is even appropriate. But, he provides no additional argument or authority to support it. A party waives an assignment of error not adequately argued in its brief. Milligan v. Thompson, 110 Wn. App. 628, 635, 42 P.3d 418 (2002); see RAP 10.3(a)(6).

trial court declined to order injunctive relief. 40 Wn.2d at 265. The Washington Supreme Court found that the question was moot, because no judgment it entered for injunctive relief could have become effective prior to the expiration of the restrictive covenant. Id. at 270. Here, although the original restrictive period has now elapsed, we are not in a position where we need to order injunctive relief—the trial court has already done so. And, it did so prior to the expiration of the original restrictive period. In Economics Laboratory, the Ninth Circuit concluded that the district court should have denied a request for an injunction that was first made after the restrictive period had elapsed. 612 F.2d at 408. Again, in Emerick's case, the trial court ordered injunctive relief during the original restrictive period.

Next, Emerick argues that the trial court had no basis to toll the running of the noncompete covenant. And, Emerick argues that the tolling effectively granted CSC a seven year restrictive covenant in excess of what was bargained for or what is reasonable.

But, in so arguing, Emerick is effectively asking this court to credit Emerick with two years of compliance with the noncompete covenant when he has been practicing cardiology in violation of the covenant. If we were to accept Emerick's argument that the covenant should not have been tolled, the restrictive covenant would have expired September 30, 2013. That would mean that Emerick used the litigation to his advantage—the covenant would have expired before resolution of the dispute and Emerick would have violated the restrictive covenant without consequence.

The trial court granted the injunctive relief just days before the noncompete covenant would have expired. We conclude that trial court was within its equitable

authority and did not abuse its discretion when it tolled the running of the noncompete covenant until Emerick is in compliance to ensure that Emerick was not rewarded for his violation of the covenant. The trial court did not abuse its discretion when it granted equitable relief that provides CSC the benefit of its bargain.[9]

III.    Substantially Prevailing Party

Emerick also contends that the trial court erred when it concluded that CSC was the substantially prevailing party. Specifically, Emerick claims that, because the trial court rejected the relief sought by both parties and instead granted relief neutral to each party's requests, neither party is the prevailing party.

In general, a prevailing party is one who receives an affirmative judgment in his or her favor. Riss v. Angel, 131 Wn.2d 612, 633, 934 P.2d 669 (1997). If neither party wholly prevails, then the determination of who is a prevailing party depends upon who is the substantially prevailing party. Id. at 633-34. This question depends upon the extent of the relief afforded the parties. Id. Whether a party is a prevailing party is a mixed question of law and fact that this court reviews under an error of law standard. Cornish College, 158 Wn. App. at 231.

Emerick first claims that, because the trial court concluded that CSC's noncompete was unreasonable and unenforceable, the court granted Emerick the relief he sought from the outset. At the outset of the litigation, Emerick filed a complaint seeking declaratory relief that paragraph 13 of the Agreement—in its entirety—is void and unenforceable as

---

[9] Moreover, although Emerick's relocation may come at great expense and inconvenience to him, that need not inform our decision. Emerick took a calculated risk by opening his practice in June 2011 while the appeal in Emerick I was pending. And, the trial court considered the expense and inconvenience to Emerick when it made its ruling. As such, it provided Emerick nearly eight months to relocate his office.

against public policy. Emerick sought a permanent injunction enjoining CSC from enforcing paragraph 13 and a judgment declaring paragraph 13 unenforceable. Conversely, CSC sought declaratory relief that the noncompete covenant is enforceable.

Emerick argues that the trial court must have found the noncompete covenant unenforceable before it could revise the agreement. He relies on Perry for the assertion that a modification to a covenant is proper only where the original covenant is unenforceable. But, Emerick's reliance on Perry for that assertion is misplaced. The Perry court concluded that the trial court erred in modifying the covenant, because the covenant there was reasonable and therefore did not require modification. 109 Wn.2d at 703. It did not hold that a trial court must find the entirety of a restrictive covenant unenforceable before it may modify it.

Moreover, the trial court did not conclude that the noncompete was unreasonable and totally unenforceable. Rather, it concluded, "The covenant not to compete . . . is overly broad, unreasonable and therefore unenforceable with respect to the geographic (Pierce County and Federal Way, Washington) and temporal (60 months) restraints it seeks to impose, as those restraints are greater than is reasonably necessary to protect Defendant's interests."

Emerick then relies on authority from other jurisdictions. Specifically he contends that there is no reported Washington decision addressing whether there is a prevailing party for purposes of attorney fees when the trial court modifies a noncompete covenant. But, there is analogous case law that states that simply because one party is not afforded as much relief as is originally sought, does not mean that the opposing party has obtained relief. Silverdale Hotel Associates v. The Lomas & Nettleton Co., 36 Wn. App. 762, 774,

20

677 P.2d 773 (1984). In Silverdale, Lomas & Nettleton argued that neither party prevailed in the case, because both parties received relief. See Id. But, the court rejected that argument stating that just because the damages against Lomas & Nettleton were not as high as Silverdale originally prayed for, does not mean that Lomas & Nettleton received relief. Id. at 774. Similarly, here, just because certain terms of the noncompete were modified, does not mean that Emerick received relief when the covenant was still substantially enforced.

The trial court did not err when it concluded that CSC was the substantially prevailing party.

IV.    Fee Award Calculation

Emerick argues that the trial court abused its discretion when it awarded CSC $204,251.39 in attorney fees and costs. The trial court's fee award included expenses for all activities, hearings, and motions related to this litigation, including those through the entry of the findings and conclusions related to the attorney fee award. We review an award of attorney fees for abuse of discretion. Steele v. Lundgren, 96 Wn. App. 773, 780, 982 P.2d 619 (1999).

Emerick first argues that CSC's fees should be limited to the amount of fees for prevailing on its motion for summary judgment. He further argues that CSC is not entitled to fees for claims on which it was previously unsuccessful. But, Emerick provides no authority to support either of these assertions. Therefore, he has not established that the trial court abused its discretion.

Emerick also contends that CSC is not entitled to attorney fees for administrative tasks performed by attorneys. He contends that CSC billed $3,275 in attorney time for

administrative tasks. Emerick requested a reduction of the same amount of fees for administrative tasks below. While compensation for administrative tasks such as preparing pleadings for duplication, delivering copies, and requesting copies, are not within the realm of reasonable attorney fees, the trial court acknowledged that CSC excluded those billings. N. Coast Elec. Co. v. Selig, 136 Wn. App. 636, 644, 151 P.3d 211 (2007). The trial court found that CSC reduced its request for attorney fees by $6,326 or other noncompensable time included in the billing records. It reasoned that this amount exceeded the amount of reductions Emerick sought. On appeal, Emerick does not specify why the $6,326 reduction was inadequate to address the administrative tasks in the billing. As such, we have no grounds upon which to conclude the trial court abused its discretion in refusing to reduce the fee award further.

Emerick then contends that the trial court improperly awarded CSC attorney fees for matters unrelated to the litigation. Specifically, he contends that CSC was not entitled to fees for its efforts to terminate Emerick, to determine its potential conflicts of interest, corporate work for CSC, legal action CSC considered against nonparties, and its work on malpractice coverage. But, Emerick provides no authority to support the assertion that the trial court did not exclude fees for unrelated work nor does he provide specific argument or authority indicating that the trial court abused its discretion in making its calculation.

Finally, Emerick claims that the fees and costs were unreasonable because CSC did not exercise billing discretion. He contends this is so, because 15 attorneys worked on the briefing constituting duplicative work. Emerick compares the amount of fees he was entitled to earlier in the litigation to the amount of fees CSC would have collected at

that point in time and claims that CSC's fees were 405 percent greater. But, Emerick does not provide any authority for the assertion that a party is per se not entitled to fees when it has a large number of attorneys working on the case or because its fees are much higher than its opponent's fees.

Finally, CSC incurred costs when it hired an analyst to determine the ratio of adult cardiologists to population in Pierce County and Federal Way. It did so in order to show that the public would not be harmed by the restrictions placed on Emerick by the noncompete provision. Emerick claims that the $7,400 cost of the analyst was unreasonable, because "it is excessive given the market." But, Emerick provides no authority to support this assertion.

Emerick provides no basis upon which we can conclude that the trial court abused its discretion in ordering the fee award in the amount that it did.

V.    CSC's Fees for *Emerick I*

CSC cross appeals and argues that the trial court erred as a matter of law by denying it fees incurred during the Emerick I appeal.

Whether a party is entitled to attorney fees is an issue of law that this court reviews de novo. Unifund CCR Partners v. Sunde, 163 Wn. App. 473, 484, 260 P.3d 915 (2011). RAP 18.1 states that applicable law must grant a party the right to recover reasonable attorney fees or expenses on review before the Court of Appeals. RCW 4.84.330 provides attorney fees to the prevailing party on contracts that specifically provide for an

attorney fee and costs award. Here, the Agreement authorized attorney fees to the prevailing party, including fees on appeal.[10]

Division Two first issued its opinion in Emerick I, unpublished, on February 23, 2012. In that opinion, Division Two vacated Emerick's attorney fee award, remanded for further proceedings, and awarded CSC statutory attorney fees on appeal. Emerick I, slip op. at 11. Subsequently, on July 10, 2012, Division Two issued an order amending the opinion. Order Amending Opinion, Emerick v. Cardiac Study Ctr., Inc., No. 41597-6-II, at 1-2 (Wash. Ct. App. Jul. 10, 2012). The order clarified that it awarded CSC its costs on appeal as the prevailing party, but it denied CSC's request for attorney fees under RAP 18.1, because CSC did not devote a section of its opening brief to the request for fees. Id. Then, on August 8, 2012, Division Two issued an order amending the opinion again and granting a motion to publish. Order Amending Opinion & Granting Motion to Publish, Emerick v. Cardiac Study Ctr., Inc., No. 41597-6-II (Wash. Ct. app. Jul. 10, 2012). Among other things, the order reverted to the language regarding CSC's fees from the original opinion—CSC is awarded statutory attorney fees. Id. at 1-2. There was no mention of CSC's RAP 18.1 fees.

On remand, the trial court found that CSC's attorney fees were reasonable for work performed at the trial court both before and after remand, but it ultimately determined that CSC did not have a legal basis for recovering its prevailing party attorney fees for the appellate work. It concluded this was so, because CSC did not follow RAP 18.1's

_____

[10] Paragraph 18 of the agreement provided that, "If either party shall bring any suit or action against the other for any type of relief, declaratory or otherwise, including any appeal thereof, arising out of this Agreement, the prevailing party shall have and recover against the other party, in addition to all court costs and disbursements, such sum as the court may adjudge to be reasonable attorney's fee." (Emphasis added.)

24

procedural requirement that a party seeking attorney fees request them in its opening brief. In its findings of fact, the trial court reasoned that the fees on appeal were already denied by the Court of Appeals. As a result, it declined to award CSC $83,169.50 in fees incurred on the appeal and $1,368.87 in costs.

CSC claims that the trial court erred as a matter of law when it denied CSC its reasonable attorney fees incurred on appeal. It argues that Washington case law supports an award of prevailing party attorney fees under RAP 18.1 only where the party requesting those fees is the prevailing party in the underlying action. CSC argues that it was not yet the prevailing party on the underlying action until it prevailed on its motion for summary judgment. Therefore, it claims any request for fees pursuant to RAP 18.1 before Division Two would have been premature.

CSC's appeal was a challenge to the trial court's order granting Emerick's motion for summary judgment. See Emerick I, 170 Wn. App. at 250. The Emerick I court's decision had the effect of undoing Emerick's status as the prevailing party, but the court had not yet concluded—and could not yet conclude—that CSC should prevail on the merits of the underlying action. See Id. at 259. CSC did not directly appeal—nor could it—the trial court's denial of its motion for summary judgment. Therefore, a request for fees as the prevailing party on the underlying action would have been premature.

Emerick claims that CSC should be estopped from arguing that a fee award was premature, because it sought attorney fees under RAP 18.1. But, simply because CSC made a premature request for attorney fees, does not mean that it was ineligible to request those fees at a later time—when it was determined to be the prevailing party on the merits of the underlying action.

25

Emerick also argues that CSC should be estopped from arguing that it was not yet determined to be the prevailing party on appeal because the Emerick I court awarded CSC statutory attorney fees. In other words, Emerick argues that because the trial court declared CSC a prevailing party for purposes of statutory attorney fees on the first appeal, CSC would have been awarded any other prevailing party attorney fees at that time had the Emerick I court wished to award them.

But, the Emerick I court awarded CSC statutory attorney fees not based on a prevailing party contract theory. While not specified in Emerick I, the court likely awarded the statutory fees pursuant to RCW 4.84.080 which provides for $200 of fees in all actions where a judgment is rendered in the court of appeals after argument. RCW 4.84.080 is different than RCW 4.84.330, which provides for recovery of prevailing party attorney fees under a contract.

It was not until after CSC prevailed on summary judgment—until the trial court determined that the noncompete covenant was reasonable as reformed—that CSC became the prevailing party on the underlying contract. Therefore, CSC had no reason to request, and the Emerick I court could not reach the issue of, CSC's prevailing party fees under RCW 4.84.330 and RAP 18.1 until that time. It thus delayed that determination pending resolution of the underlying action on remand.

The trial court erred to the extent that it believed the holding in Emerick I precluded it from awarding CSC attorney fees for the first appeal once it determined that CSC was the substantially prevailing party. We remand to the trial court for consideration of a reasonable attorney fee award, including fees from the first appeal.

## VI.   Fees for the Current Appeal

Both Emerick and CSC argue that they are entitled to attorney fees and costs for this appeal.

Emerick argues that he is entitled to attorney fees and costs pursuant to RAP 18.1(a) as the prevailing party on this appeal.   Similarly, CSC argues that it is the prevailing party in the action and is entitled to fees under RAP 18.1, the terms of the Agreement, and RCW 4.84.330.

CSC prevailed on every issue in this appeal, and is therefore entitled to fees under RAP 18.1.   Because we remand to the trial court for reconsideration of the Emerick I attorney fee award, we also remand for the trial court to award reasonable attorney fees for this appeal.   See RAP 18.1(i) (stating that the appellate court may direct that the amount of fees and expenses be determined by the trial court after remand).

We remand to the trial court for an award of fees to CSC.   We otherwise affirm.

WE CONCUR: